William T. MILLER

v.

The UNITED STATES.

No. 350-65.

United States Court of Claims.
May 13, 1966.

Robert Granville Burke, New York City, for plaintiff.

Charles M. Munnecke, Washington, D. C., with whom was Asst. Atty. Gen. John W. Douglas, for defendant.

Before COWEN, Chief Judge, and LARAMORE, DURFEE, DAVIS and COLLINS, Judges.

PER CURIAM.

This case was referred to Trial Commissioner Mastin G. White with directions to make recommendation for conclusions of law. The commissioner has done so in an opinion and report filed on January 14, 1966. Plaintiff requested review of the commissioner's report and opinion pursuant to Rule 55(b) (3) and the case was submitted to the court upon the briefs of the parties and oral argument of counsel. Since the court is in agreement with the opinion and recommendation of the commissioner, with a modification, it hereby adopts the same, as modified, as the basis for its judgment in this case, as hereinafter set forth. Therefore, plaintiff is not entitled to recover, defendant's motion to dismiss the petition is allowed and the petition is dismissed.

Commissioner White's opinion,* as modified by the court, is as follows:

On October 11, 1965, the plaintiff, a former officer of the Regular Army, filed a petition in this court asking for a judgment against the defendant for disability retirement pay from the date in September 1948 when the plaintiff's release from active military duty became effective pursuant to the acceptance of his previously submitted resignation from the Regular Army.

---

* The opinion and recommended conclusion of law are submitted pursuant to order of the court under Rule 54(b). The facts are stated in the opinion.

The defendant has filed a motion to dismiss the petition "on the ground that any claim which the petition may state is barred by the statute of limitations," or, in the alternative, on the ground that the petition fails to state a cause of action.

It is my opinion that the defendant's motion should be allowed.

The facts of the case, as they appear for the purpose of considering and disposing of the motion to dismiss the petition, are summarized in the succeeding paragraphs of this opinion.

The plaintiff graduated from the United States Military Academy in June 1944 and was commissioned in the Regular Army as a Coast Artillery Officer. He served in the Army with distinction during the latter part of World War II, and was awarded the Bronze Star (Valor) for heroic service in China.

As of April 7, 1948, the plaintiff was a first lieutenant assigned to the U. S. Military Ground Mission in La Paz, Bolivia. On that date, the plaintiff submitted to the Adjutant General of the Army, through channels, an "unconditional resignation from the Army—to be effective at my home upon the completion of four (4) years commissioned service on 6 June 1948." In setting out the reasons for his resignation, the plaintiff stated (among other things) that "All phases of military life are completely and utterly distasteful to me," that he was "far too 'radical' and outspoken in my personal views for the staid tranquility of army society," that "Having moderate ambition in life, the idea of serving as a perpetual lieutenant is galling to say the least," and that "personal family considerations make it mandatory at this time for me to save appreciable money for future exigencies," which he could not do as an Army lieutenant.

In May 1948, while the plaintiff's resignation was being processed through channels, the plaintiff was ordered to the 262nd United States General Hospital at Fort Clayton, Canal Zone, for "NP observation" (i. e., neuropsychiatric observation). On June 14, 1948, the chief of the Neuropsychiatric Service at that hospital certified that the plaintiff "very definitely exhibits a definite schizoid trend."

After the plaintiff's letter of resignation was received by the Adjutant General of the Army, he referred it on June 29, 1948, to the Surgeon General of the Army for the latter's recommendation as to "whether or not appearance of Lieutenant Miller before an Army Retiring Board is indicated." The response from the office of the Surgeon General was dated July 1, 1948, and stated in part as follows:

2. It is the opinion of this office that this officer may have an incapacitating defect warranting appearance before an Army retiring board.

3. Recommend officer be authorized hospitalization in the Army general hospital nearest his home specializing in psychiatry for observation, necessary treatment, appearance before a disposition board and, if warranted, before an Army retiring board.

Subsequently, the plaintiff, then being in the United States, was assigned to the Walter Reed General Hospital in Washington, D. C., for observation and treatment. After the plaintiff had undergone a period of hospitalization, his case was considered by a disposition board at the Walter Reed General Hospital on August 27, 1948. The board concluded that the plaintiff had a "Paranoid personality, mild," but that he did not suffer from any degree of disability for military service, and the board recommended that plaintiff "be returned to full military duty." The board's report was approved on August 30, 1948. Thereupon, the office of the Surgeon General informed the Adjutant General that it concurred in the view of the disposition board that the plaintiff was not suffering from any physical defect warranting appearance before an Army retiring board.

On September 15, 1948, the Adjutant General, acting for the Secretary of the

Army, informed the plaintiff that his resignation from the Regular Army was accepted effective September 17, 1948. The letter from the Adjutant General contained a paragraph stating in part as follows:

4. Department of the Army records, including disposition board proceedings, * * * have been carefully reviewed in the Department of the Army and reveal *no physical defect,* therefore your appearance before an Army Retiring Board with view to retirement for physical disability is not indicated. [Emphasis in original.]

The plaintiff's service in the Regular Army and his active-duty status were terminated effective September 17, 1948. However, the plaintiff was tendered at that time, and he duly accepted, a commission as captain in the Army Reserve.

In March 1951, the plaintiff was ordered to active military duty as a Reserve officer for the purpose of attending a school in military intelligence. The plaintiff later volunteered for duty in Korea, and was ordered to take the necessary physical examination for such duty. This examination was performed at the Walter Reed General Hospital, where it was determined that the plaintiff did not meet the physical standards of the Army because of "paranoid personality, moderate." On August 16, 1951, the plaintiff was advised that he was disqualified for retention in the active or inactive Reserve, since "his physical defect was not considered remediable within a period of one year." Effective September 16, 1951, the plaintiff was involuntarily transferred to the Honorary Reserve.

On October 24, 1961, the plaintiff filed an application with the Army Board for Correction of Military Records. In this application, the plaintiff requested that a re-evaluation of his physical status in 1948 and in 1951 be accorded him, and that he be restored to active military duty in his proper grade. On January 28, 1963, the Adjutant General advised the plaintiff that it had been determined by the Army Board for Correction of Military Records on January 16, 1963, that insufficient evidence had been presented to indicate probable material error or injustice, and that so much of his application as requested re-evaluation of medical findings, reinstatement in the active Reserve, and recall to active duty was denied.

On July 12, 1963, the plaintiff filed another application with the Army Board for Correction of Military Records, requesting a revocation of his resignation from the Regular Army and that he be placed on the Physical Disability Retired List of the Army. The ground stated in the application was that at the time of the plaintiff's separation from the Regular Army in 1948, he had a permanent physical disability and was unfit to perform the duties of his rank. Evidence as to the plaintiff's physical disability in 1948 and in 1951 was presented to the board in support of the application, and a hearing before the board was requested. The request for a hearing was denied. On October 9, 1964, the Adjutant General advised the plaintiff that the Army Board for Correction of Military Records, after examining and considering the plaintiff's record and the material submitted, had determined on September 16, 1964, that insufficient evidence had been presented to indicate probable material error or injustice, and, accordingly, that the plaintiff's application for relief was denied.

The petition alleges (and this allegation must be accepted as correct for present purposes) that at the time when the plaintiff's resignation from the Regular Army was accepted as of September 17, 1948, he "was permanently incapacitated for active or general service by reason of a disease or condition incurred while in the service."

The question for decision by the court in the present proceeding is whether the plaintiff's claim for disability retirement pay first accrued within, or prior to the beginning of, the 6-year period immediately preceding the filing of the plaintiff's petition on October 11, 1965.

In this connection, 28 U.S.C. § 2501 (1964) provides in part as follows:

Every claim of which the Court of Claims has jurisdiction shall be barred unless the petition thereon is filed within six years after such claim first accrues.

It will be noted that, according to the allegations in the petition, the plaintiff was permanently incapacitated for military service, by reason of a disease or condition incurred while in the service, at the time when he was separated by the Army on September 17, 1948. Hence, inasmuch as we consider the allegations in the petition to be correct for present purposes, the plaintiff was really entitled to receive disability retirement pay from and after September 17, 1948, which antedated the filing of the petition by approximately 17 years. However, this court has held that when a disabled serviceman is separated from the military service without being granted the disability retirement pay to which he is entitled, his separation from the service does not, in and of itself, cause his claim for disability retirement pay to accrue for the purpose of beginning the 6-year period of limitations prescribed in 28 U.S.C. § 2501. Patterson v. United States, 141 Ct.Cl. 435, 438 (1958); Grubin v. United States, 333 F.2d 861, 862, 166 Ct.Cl. 272, 276 (1964); Dayley v. United States, 169 Ct.Cl. 305, 308 (1965). This is because a system of boards to pass upon eligibility for disability retirement from the Armed Forces has been established by statute; and an adverse determination by such a board, or the denial to a disabled serviceman of an opportunity to have his case considered by such a board, is essential to complete the prescribed administrative process.

■ Disposition boards are not part of the statutory system of boards mentioned in the preceding paragraph. Consequently, the finding by the disposition board at Walter Reed .General Hospital in August 1948 that the plaintiff was not suffering from any degree of disability for military service did not "trigger" the running of the period of limita-

tions. Grubin v. United States, supra, 333 F.2d 861, 166 Ct.Cl. at page 276; cf. Hoppock v. United States, 163 Ct.Cl. 87, 90 (1963).

■ Retiring boards are statutory boards with authority to pass upon eligibility for disability retirement; and if the board decision mentioned in the preceding paragraph, to the effect that the plaintiff was not suffering from any degree of disability for military service, had been made by an Army retiring board, this would have been sufficient to cause the plaintiff's claim for disability retirement pay to accrue, and to begin the running of the 6-year period of limitations. Friedman, Executrix v. United States, 310 F.2d 381, 396, 403, 159 Ct.Cl. 1, 24, 36 (1962), cert. den. Lipp v. United States, 373 U.S. 932, 83 S.Ct. 1540, 10 L.Ed.2d 691 (1963); Dayley v. United States, supra, 169 Ct.Cl. at pages 307–308. Similarly, if the plaintiff had requested that his case be referred to a retiring board and his request had been denied by the Army, this would have been sufficient to start the running of the limitations period. Lipp v. United States, 301 F.2d 674, 676, 157 Ct.Cl. 197, 201 (1962), cert. den. 373 U.S. 932, 83 S.Ct. 1540, 10 L.Ed.2d 691 (1963); Dye v. United States, 166 Ct.Cl. 540, 543, 545 (1964), cert. den. Hellner v. United States, 379 U.S. 837, 85 S.Ct. 71, 13 L.Ed.2d 44.

In the present case, although the plaintiff did not himself request that his case be referred to an Army retiring board in connection with his separation from the service in September 1948, the Army itself gave consideration to the question of whether such a reference should be made, and the determination was negative. The Adjutant General, acting for the Secretary of the Army, officially notified the plaintiff under the date of September 15, 1948, that the "Department of the Army records * * * reveal *no physical defect*," and that the plaintiff's "appearance before an Army Retiring Board with view to retirement for physical disability is not indicated." This alerted the plaintiff to the Army's

adverse position concerning any claim that he might have for disability retirement pay, with the same effectiveness as if the notification had been sent to the plaintiff in response to a specific request from him that his case be referred to an Army retiring board.[1]

The Supreme Court has said that statutes of limitations are "designed to promote justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared." Order of Railroad Telegraphers v. Ry. Express Agency, 321 U.S. 342, 348–349, 64 S.Ct. 582, 586, 88 L.Ed. 788 (1944). They are "founded upon the general experience of mankind that claims, which are valid, are not usually allowed to remain neglected." Riddlesbarger v. Hartford Insurance Co., 74 U.S. (7 Wall.) 386, 390, 19 L.Ed. 257 (1868).

■ It would thus be wholly inconsistent with the rationale behind the enactment of the 6-year statute of limitations applicable to actions in this court if the plaintiff, after being officially notified in September 1948 that the Department of the Army would not refer his case to a retiring board, were permitted to wait—not merely 6 years—but approximately 17 years and then obtain from this court an adjudication of his entitlement to disability retirement pay. I believe, therefore, that the official notification from the Adjutant General to the plaintiff under the date of September 15, 1948 that the Army had determined not to refer the plaintiff's case to a retiring board was sufficient to cause the plaintiff's claim for disability retirement pay to accrue, and thus to cause the 6-year period of limitations under 28 U.S.C. § 2501 to begin to run.

The fact that the Army's determination not to refer the plaintiff's case to a retiring board was erroneous (according to the petition) did not deprive such de-

termination of finality or affect the running of the 6-year limitations period. Dye v. United States, supra, 166 Ct.Cl. at pages 545–546.

Furthermore, the adverse determinations by the Board for Correction of Military Records in January 1963 and in September 1964 on the plaintiff's applications to that board for relief did not give rise to a new cause of action. Friedman, Executrix v. United States, supra, 310 F.2d 381, 159 Ct.Cl. at page 25.

As the plaintiff's claim for disability retirement pay first accrued more than 6 years prior to the filing of the petition with this court on October 11, 1965, the claim is time-barred. Consequently, the defendant's motion to dismiss the petition should be allowed, and the petition should be dismissed.

---

1. In connection with plaintiff's awareness of a possible question as to disability, it should be remembered that he had been ordered for hospital examination (not a routine procedure) and had been kept in the hospital for observation and examination for some three weeks (in a locked ward).