Jerry Lynn **REAL**, Plaintiff,

v.

The **UNITED STATES**, Defendant.

No. 53–89C.

United States Claims Court.

Aug. 31, 1989.

Kenneth M. Carpenter, Topeka, Kan., atty. of record for plaintiff.

James M. Kinsella, Washington, D.C., with whom was Acting Asst. Atty. Gen. Stuart E. Schiffer, for defendant.

## OPINION

REGINALD W. GIBSON, Judge:

*Introduction*

Jerry Lynn Real (plaintiff), a former United States Navy serviceman, seeks disability retirement pay pursuant to 10

U.S.C. § 1201 *et seq.* (1989).[1] More specifically, plaintiff seeks review of a May 6, 1987 decision of the Board for the Correction of Naval Records (BCNR) which denied plaintiff's application for permanent disability. This status was sought because plaintiff was later diagnosed with a condition, now known as Post Traumatic Stress Disorder (PTSD), eight years after his discharge from active duty on February 25, 1974. Plaintiff's January 31, 1989 petition in this court seeks review on the grounds that the BCNR denial of his application for correction was arbitrary, capricious, and not otherwise authorized by law. Further, plaintiff seeks declaratory and injunctive relief.

Pursuant to RUSCC 12(b), the United States (defendant) moved to dismiss, alleging that plaintiff's action is jurisdictionally barred by the six-year statute of limitations contained in 28 U.S.C. § 2501 (1989). This court's jurisdiction is premised on 28 U.S.C. § 1491 (1989). Based on the pleadings, and without oral argument, plaintiff's claim is barred by the six-year statute of limitations.

*Facts*

On November 11, 1966, plaintiff enlisted through a deferred entry program in the United States Navy at the age of 17. Thereafter, he entered the service on February 14, 1967, and was sent to Vietnam in December of that same year. A mandatory enlistment physical examination disclosed no physical or psychological defects. Plaintiff voluntarily extended his tour of duty in Vietnam three times. During this period, he served as a helicopter crew chief and door gunner in conjunction with Navy Special Forces Operations. While acting as gunship backup for covert missions carried out by Navy Intelligence and Riverine forces, plaintiff was repeatedly exposed to heavy combat which involved numerous firefights, heavy destruction, and extensive killing. Plaintiff was also exposed to the combat deaths of many fellow soldiers, some of which, according to plaintiff, were horrible experiences. On May 6, 1969, plaintiff re-enlisted in the Navy for a six-year term. His re-enlistment physical examination disclosed some physical injuries, but no psychiatric defects. Plaintiff was thus pronounced fit for re-enlistment. Although he requested to further extend his tour of duty in Vietnam, plaintiff was transferred stateside in August, 1970.

Upon return to the United States in 1970, plaintiff was stationed in Beeville, Texas. On July 12, 1971, plaintiff reported to the Naval Dispensary in Beeville complaining that he had been hearing things and that the noise bothered him severely. Further, plaintiff reported that he had been taking his anxieties out on his family and that they had recently filed assault charges against him. As a consequence, he received a psychiatric consultation on the next day and, on July 16, 1971, was placed on the psychotropic drug Thorazine. He returned to the dispensary for further consultation and observation on July 20, at which time his condition was described as

---

**1.** 10 U.S.C. § 1201 states in pertinent parts as follows:

Upon a determination by the Secretary concerned with a member of a regular component of the armed forces entitled to basic pay ... is unfit to perform the duties of his office ... because of physical disability incurred while entitled to basic pay, the Secretary may retire the member, with retired pay computed under section 1401 of this title, if the Secretary also determines that—

(1) based upon accepted medical principles, the disability is of a permanent nature and stable;

(2) the disability is not the result of the member's intentional misconduct or willful neglect, and was not incurred during a period of unauthorized absence; and

(3) either—

\* \* \* \* \* \*

(B) the disability is at least 30 percent under the standard schedule of rating disabilities in use by the Veterans' Administration at the time of the determination; and either—

(i) the member has at least eight years of service computed under section 1208 of this title;

(ii) the disability is a proximate result of performing active duty;

(iii) the disability was incurred in line of duty in time of war or national emergency; or

(iv) the disability was incurred in line of duty after September 14, 1978.

"about the same" as it had been the previous week.

Four days later, on July 24, 1971, plaintiff voluntarily went to the Naval Hospital emergency room in Corpus Christi, Texas. He reported urges to kill his wife, having found himself choking her immediately prior to reporting to the emergency room. Medical reports prepared by LCDR Kelley described plaintiff as having intense feelings of guilt and anger, as well as both visual and auditory hallucinations. Plaintiff described these experiences as "flashbacks." Thereafter, he was admitted to the hospital where he remained until August 25, 1971. During this period of hospitalization, plaintiff reported that he had experienced an increased level of irritability and annoyance with third persons. Dr. Kelley diagnosed plaintiff's condition as drug-induced psychosis with flashbacks.[2] Upon discharge from the hospital, plaintiff was considered fully rehabilitated and therefore fit for full active duty.

On June 6, 1973, plaintiff was required to submit to another psychiatric examination for re-evaluation. The reason for the examination, according to the clinical record prepared by Dr. Kelley, was plaintiff's history of psychiatric problems. The consultation report stated that plaintiff had a history of difficulty in managing aggressive urges, and diagnosed plaintiff as having an aggressive personality with poor impulse control that had the potential to deteriorate into a psychotic state if under severe stress. Plaintiff did not receive any further psychiatric evaluation or treatment while in the Navy.

Plaintiff received an honorable discharge from the United States Navy on February 24, 1974. Concurrent with his discharge, he was examined by Navy physicians, who concluded that he was *fit for full active duty.* This conclusion was certified by Navy physicians in a February 25, 1974 Report of Medical Examination. In addition to the usual medical information, including a "normal" clinical evaluation of plaintiff's psychiatric condition in box 42, the report also contained the following certification signed by plaintiff: "I certify that I have been informed of and understand the provisions of BUMED INSTRUCTION 6120.6."

This instruction provides that all personnel must be apprised of the possibility that disability benefits may be denied by reason of their failure to rebut, under certain circumstances, a finding of fitness for active duty.[3] If, at the time of discharge, a service member is found fit for active duty, the medical officer conducting the examination is required to inform the person of the results, the unavailability of benefits after discharge, and the right to contest the results at that time. The service member is required to certify that he or she has been informed of and understands the provisions of the instruction.[4] Plaintiff was found fit

---

**2.** The hospital report prepared by Dr. Kelley indicates that plaintiff admitted using several illicit drugs while on active duty in Vietnam. Consequently, plaintiff applied for and received a drug abuse exemption. Dr. Kelley's diagnosis of drug-induced psychosis appears to be based on plaintiff's admission of drug use, particularly plaintiff's visual and auditory hallucinations or "flashbacks." Plaintiff has, however, consistently maintained throughout the rest of the record that amphetamines were the only drug he used in Vietnam, and that they were provided by medics in order to keep him awake during missions. Furthermore, in a subsequent March 25, 1984 Veterans Administration medical examination, the examining physician concluded that the drugs listed on plaintiff's 1971 hospital records were "... either a clerical error or a falsification, because every drug on the stock list is checked off as being used heavily ... including numerous drugs that were not even available in Vietnam, at least, not common-

ly...." For the purposes of this motion, this court must consider the evidence in the light most favorable to the plaintiff. As such, plaintiff's assertion that he did not use illicit drugs while on active duty in Vietnam will be considered as true for the purposes of this motion.

**3.** For a complete discussion of the policy, background, and procedural requirements under BUMED INSTRUCTION 6120.6, *see Huffaker v. United States,* 2 Cl.Ct. 662, 664 (1983).

**4.** The provisions of BUMED INSTRUCTION 6120.6D, applicable on the date of plaintiff's discharge, provided the following statement which all service members were required to read prior to certifying their medical examination report:

You have been examined and found to be physically fit for separation from active duty. If you feel you have a *serious defect or condi-*

for active duty, and failed to immediately object to this finding prior to discharge. He therefore certified that he had been informed of and understood BUMED IN-STRUCTION 6120.6. Consequently, there was no further evaluation of plaintiff's condition and thus, his discharge was not the result of a disability.

Following his discharge in 1974, plaintiff was sporadically and inconsistently employed, primarily as a truck driver. Plaintiff's employment history is described as consisting of numerous jobs of short duration. Plaintiff acknowledged that during this period he had a tendency to abuse alcohol, and, to a lesser degree, some street drugs. On February 16, 1979, plaintiff was alleged to have sexually assaulted a female relative. While plaintiff later stated that he was unable to recall any of the circumstances that were alleged to have taken place because of two days of heavy drinking, plaintiff's siblings attributed the incident to plaintiff's hostile attitude towards his family. Plaintiff was convicted and incarcerated in the Nebraska Penal and Correctional Complex in Lincoln, Nebraska, until he was paroled for diagnosis and treatment of his psychiatric problems on September 26, 1983. The record contains several references to his inability to adopt to social norms following his return from Vietnam, including both legal and significant interpersonal problems between 1971 and 1979. Plaintiff's criminal evaluation report, along with observations contained in subsequent medical reports, also indicate that plaintiff had average or above average intelligence which was not significantly impaired by his condition.

On November 24, 1982, more than eight years following his discharge, plaintiff made a claim for Veterans Administration (VA) disability benefits on the grounds that he was suffering from Post Traumatic Stress Disorder (PTSD). In this applica-

tion, plaintiff described his Vietnam experiences which allegedly caused him to suffer from PTSD. He also described his situation immediately upon his return from Vietnam, consisting of nightmares over several months and long periods of flashbacks. Plaintiff also stated that he "almost killed" his wife on a couple of occasions when he was suffering from these nightmares and flashbacks. Plaintiff stated that he "tried to get help"; moreover, he complained of the government's failure to solve the problem. In fact, plaintiff states that the treatment he received, namely drugs, did not alleviate his condition.

On December 24, 1982, plaintiff was first diagnosed as suffering from PTSD following a referral to the Lincoln, Nebraska Veterans Administration Center. This report suggests that plaintiff's personality crystalized during his three-year tour of duty in Vietnam and was not amenable to subsequent alteration. In a later evaluation by the Lincoln VA Center on July 20, 1983, plaintiff again indicated that he experienced problems with nightmares and "flaskbacks" immediately upon his return from Vietnam. He indicated that he suffered from intrusive thoughts almost daily for a period of approximately two years. Additionally, plaintiff recalled "an exaggerated startle response" and significant interpersonal problems during that time. These problems abated between 1973 and 1979, but the symptoms again became more pronounced and troublesome.

Plaintiff was thereafter referred and admitted to the Colmery–O'Neil Veterans Administration Medical Center in Topeka, Kansas. There, he was treated on the Vietnam PTSD ward from September 26, 1983 through March 14, 1984. On or about that date plaintiff was transferred to a general psychiatry unit, where he remained until September 11, 1984. The record con-

---

*tion* that is unfitting, tell the doctor who examined you. The doctor will evaluate your defect or condition and, if necessary, refer you to a hospital for further study and, if warranted by the further study, appearance before a medical board.
*To receive a disability pension from the Navy, you must be found unfit to perform your*

*duties before you are separated.* After you are separated, any claims for disability must be submitted to the Veterans Administration.
Please sign the statement on the back of the SF 88 (Report of Medical Examination), in block 73, to show that you understand the foregoing.
(emphasis added).

tains three hospital reports from this period, dated March 25, 1984, April 26, 1984, and September 12, 1984. All three concluded that plaintiff was suffering from PTSD, with secondary diagnoses ranging from recurrent depression to a borderline personality disorder. In fact, all three concluded that plaintiff's problems could be traced to his experience in Vietnam. Plaintiff was treated at the VA as an out-patient on two occasions in 1985, each for two days.

Plaintiff applied for and received Social Security disability benefits retroactive to September 26, 1983. He also applied for a service-related disability rating from the VA by reason of PTSD. Further, he was granted a 10% disability rating retroactive to October 18, 1982, and a 100% disability rating after September 26, 1983. On March 31, 1986, plaintiff petitioned the Board for the Correction of Naval Records (BCNR) to change the nature of his 1974 discharge from honorable to medically disabled. The BCNR denied the application on May 6, 1987. Pursuant to 10 U.S.C. § 1201, plaintiff filed a petition in this court on January 31, 1989, seeking disability retirement pay retroactive to his discharge on February 25, 1974, by reason of PTSD allegedly suffered as a result of his combat experiences in Vietnam. On May 30, 1989, defendant moved to dismiss the complaint, pursuant to RUSCC 12(b), on the grounds that the claim is barred by the six-year statute of limitations as set forth in 28 U.S.C. § 2501.

*Contentions of the Parties*

A. *Defendant*

Relying on *Huffaker v. United States*, 2 Cl.Ct. 662 (1983), defendant contends that the six-year statute of limitations set forth in 28 U.S.C. § 2501 began to run at the time plaintiff was discharged in 1974 because he waived his right to contest the determination of fitness for full active duty. According to defendant, plaintiff was aware that he suffered from significant medical problems that resulted in his hospitalization in 1971. It is alleged that plaintiff was aware that the Navy considered him fit for full active duty at the time of discharge, and that he would be *ineligible* for future disability benefits unless he challenged the fitness for duty determination and requested further evaluation. Furthermore, according to the defendant, plaintiff had adequate notice of his potential entitlement to disability retirement pay so that he could have and should have brought suit within six years of his discharge. Thus, in defendant's view, plaintiff's cause of action accrued on February 25, 1974, and, therefore, his right to assert that claim expired on or about February 25, 1980.

B. *Plaintiff*

Plaintiff contends, on the other hand, that he was disabled at the time he was discharged on February 25, 1974, by reason of PTSD. He alleges that his psychiatric condition was not properly diagnosed prior to discharge because the symptoms from which plaintiff and other Vietnam veterans suffered were not recognized as a diagnosable disease until 1980. Thus, he argues that if PTSD had been capable of diagnosis when plaintiff returned from Vietnam, the Navy would have recognized the condition when plaintiff was first hospitalized in 1971. If his condition had been properly diagnosed, plaintiff contends that he would not have been considered fit for active duty and, therefore, would have been medically discharged with a 100% disability rating. Moreover, plaintiff appears to contend that the statute of limitations was tolled because the physical examination was cursory, that it was not reviewed by the proper Naval authorities, and that he should have received a thorough mental status evaluation in any event, given his history of psychiatric problems. Finally, plaintiff argues that the statute of limitations was tolled or waived when the BCNR considered his claim on the merits. Consequently, plaintiff argues that the statute of limitations did not begin to run until he exhausted his administrative remedies before the BCNR on May 6, 1987.

*Discussion*

The applicable statute of limitations provides that "[E]very claim of which the United States Claims Court has jurisdiction

shall be barred unless the petition thereon is filed within six years after such claim first accrues." 28 U.S.C. § 2501 (1989). It is clear, therefore, that if plaintiff's cause of action accrued on the date of discharge, February 25, 1974, or at any time thereafter but before January 31, 1983, then his claim would be barred because it was not filed until January 31, 1989. Said filing date was beyond the six-year period from the accrual of the cause of action. If, on the other hand, plaintiff's claim did not accrue or ripen until the BCNR denied plaintiff's application on May 6, 1987, plaintiff's petition in this court is timely because the six-year limitation period had not yet expired. It is, therefore, necessary to first determine when plaintiff's cause of action accrued in this matter. Secondly, we must examine whether any fact, circumstance, or event tolled the statute of limitations.

### A. *Accrual*

It is now a well established general rule that a cause of action for retirement disability pay does not accrue until a board with proper authority has either denied the claim or declined to act on that claim. *See, e.g., Friedman v. United States,* 159 Ct.Cl. 1, 13, 310 F.2d 381, 389 (1962), *cert. denied sub nom. Lipp v. United States,* 373 U.S. 932, 83 S.Ct. 1540, 10 L.Ed.2d 691 (1963). Release from active duty without appearing before a physical evaluation board or without requesting a board hearing has not been found, *without more,* to be enough to trigger the running of the statute of limitations. *Friedman,* 159 Ct.Cl. at 14, 310 F.2d at 390 (emphasis added). The final decision of a corrections board generally is the point at which the cause of action accrues when it is the first board to consider the eligibility of an applicant who did not appear before a retiring board prior to discharge from active duty. *Id.* at 25, 310 F.2d at 396.

However, under some circumstances, a cause of action may accrue upon discharge from active duty. In this context, we initially observe that resort to a corrections board is a permissive rather than a mandatory remedy. *See, e.g., id.* at

29–30, 310 F.2d at 398–99. *See also Bruno v. United States,* 214 Ct.Cl. 383, 556 F.2d 1104 (1977); *Brundage v. United States,* 205 Ct.Cl. 502, 504 F.2d 1382 (1974), *cert. denied,* 421 U.S. 998, 95 S.Ct. 2395, 44 L.Ed.2d 665 (1975); *Mathis v. United States,* 183 Ct.Cl. 145, 391 F.2d 938 (1968); *Kirk v. United States,* 164 Ct.Cl. 738 (1964). Thus, while disability pay claimants who did not appear before a retiring board normally seek relief from the appropriate corrections board first, the claimant need not exhaust this administrative remedy as a condition precedent to filing a petition in this court. This being the case, it is clear, therefore, that a cause of action may accrue *prior* to a final decision by the corrections board. Consequently, the statute of limitations may be triggered, and in fact expire, before the corrections board has decided or even considered the merits of an applicant's claim.

In other words, we find that a final decision by a corrections board is not a prerequisite in those situations, such as here, where a plaintiff who has not been considered by a retiring or medical review board but has had "adequate notice of his potential entitlement to disability retirement pay so that he can and should bring suit within six years." *See Friedman,* 159 Ct.Cl. at 29, 310 F.2d at 398. The statute of limitations may be triggered at the time of discharge if the claimant is put on affirmative notice that the military has taken a position adverse to any future claim for disability benefits. Thus, the statute of limitations may begin to run at the time of discharge if a serviceman has had a retiring board proceeding culminating in a denial of disability status, or if a request for referral to such a board is denied. *Miller v. United States,* 175 Ct.Cl. 871, 878, 361 F.2d 245, 249 (1966), *citing Friedman,* 159 Ct.Cl. at 24, 36, 310 F.2d 396, 403; *Lipp v. United States,* 157 Ct.Cl. 197, 201, 301 F.2d 674, 676 (1962), *cert. denied,* 373 U.S. 932, 83 S.Ct. 1540, 10 L.Ed.2d 691 (1963). Likewise, a plaintiff who did not request such a board is on notice if he is informed by the service that a retiring board would not be convened in view of an independent determination that such review was not re-

quired. *Miller*, 175 Ct.Cl. at 878–79, 361 F.2d at 249–50. It is equally true then that a claim may accrue and the statute may begin to run at discharge if a serviceman is informed of and waives his right to appear before a retiring board for the purpose of contesting a finding of fitness for full active duty. *Huffaker v. United States*, 2 Cl.Ct. 662, 665 (1983).

■ After a careful review of both the record and relevant case law, it is clear that, in this context, plaintiff's claim accrued on the date he waived the right to contest the examining physician's determination of fitness prior to discharge on February 25, 1974. This case is strikingly similar to the waiver situation addressed in *Huffaker*.

Huffaker was a Vietnam veteran who sustained physical injuries in combat which resulted in two months of hospitalization. He was released with an honorable discharge in 1968 after a physical examination which found that he was fit for active duty. Concurrent with discharge, Huffaker was required to certify that he had been informed of and understood the provisions of BUMED INSTRUCTION 6120.6C,[5] which advised that any serviceman who objected to a finding of fitness for full active duty was required to inform the examining physician in order to preserve a claim for disability subject to further review before a medical board. Huffaker did not object and was subsequently barred from asserting a disability claim in the Claims Court filed in March of 1982.

*Huffaker* held that the failure to object to an examining physician's finding of fitness for active duty at the time of discharge, when coupled with a certification of awareness as to the Navy's estimation of physical fitness, constituted a waiver of a medical board review. There the Claims Court stated that:

A physical evaluation board hearing was not instituted by the Navy in this case because it found the plaintiff fit for

duty. The Navy, in effect, concluded that no further evaluation of the plaintiff was warranted.

Plaintiff, on the other hand, also made no request for a board, notwithstanding the fact that he certified, incident to his discharge physical, that he was aware of the Navy's estimation of his condition, and of his right to request further review of his condition if he disagreed with that conclusion. Plaintiff's failure to act in response to the Navy's conditioning further medical evaluation upon plaintiff's objections, and assertion that absent an objection plaintiff would receive no further consideration, amounted to a waiver by plaintiff. In turn, the waiver of any further action triggered the running of the limitations period.

*Huffaker*, 2 Cl.Ct. at 665. *See also Duvall v. United States*, 227 Ct.Cl. 642 (1981) (rejection of the right to a retiring board would have triggered the statute of limitations if plaintiff had been advised of his rights and knowingly waived them).

Like Huffaker, plaintiff was hospitalized for a potentially unfitting condition prior to discharge. Incident to discharge he was examined by a Navy physician who determined that plaintiff was fit for full active duty. At the time of his discharge physical, plaintiff certified that he had been informed of and understood the provisions of BUMED INSTRUCTION 6120.6D. It is undisputed, therefore, that this instruction advised plaintiff that he had been found fit for full active duty and that he was required to inform the examining physician of any objection in order to preserve the right to further medical review. Plaintiff did not object to this determination until approximately 12 years later when he filed his application with the BCNR on March 31, 1986. At no time has plaintiff suggested that he either was not informed of BUMED INSTRUCTION 6120.6D or that he did not understand its ramifications.

---

5. BUMED INSTRUCTION 6120.6C was in effect at the time Huffaker was discharged, but was superceded by BUMED INSTRUCTION 6120.6D on August 13, 1969. BUMED INSTRUCTION 6120.6D, which was in effect at the time plaintiff was discharged on February 25, 1974, is in all material respects identical to the previous instruction.

Consequently, pursuant to the analysis set forth in *Huffaker*, we conclude that plaintiff's cause of action for disability retirement pay accrued on the date he waived the right to contest the examining physician's finding of fitness for full active duty prior to discharge. This finding "amounted to a clear declaration by the Navy that plaintiff was not entitled to disability retirement pay." *Huffaker*, 2 Cl.Ct at 667. Because plaintiff, like Mr. Huffaker before him, was aware of the specific provisions of BUMED INSTRUCTION 6120.6, he "was in fact affirmatively alerted to the fact that he might indeed have a claim notwithstanding the doctor's findings and that he should pursue this before he was discharged or jeopardize any potential benefits he might obtain." *Id.* Plaintiff's failure to object amounts to a waiver which has the effect of triggering the statute of limitations. In the absence of any fact, circumstance, or event tolling the limitations period, *see infra*, plaintiff's claim is barred by § 2501.

### B. *Tolling*

■ Plaintiff points to a number of factors, which, if meritorious, would toll the statute of limitations such that plaintiff's complaint in this court would be viewed as timely. If the statute was in fact tolled, plaintiff's cause of action would be viewed as having accrued only upon the BCNR's May 6, 1987 denial of the application for the correction of his records with respect to the nature of his discharge. Chief among the factors advanced by plaintiff is the contention that he was disabled at the time he was discharged from the Navy, and that, if PTSD had been capable of diagnosis at that time, a proper diagnosis would have resulted in a discharge for medical disability. While plaintiff cites no authority for this proposition, the gravamen of his argument seems to be that the statute of limitations is tolled because plaintiff and the defendant were either totally unaware of any disabling condition, or that they were both unaware of the nature, extent, or seriousness of plaintiff's condition as it then existed.

Our predecessor court has recognized that veterans who never applied for medical review because they did not know or did not appreciate either the progressive or serious character of their disease or disability will not be precluded from pursuing a claim in this court by the statute of limitations. *See e.g., Friedman*, 159 Ct.Cl. at 28–29, 34–35, 310 F.2d at 398, 402. It is implicit, however, that the statute will be tolled only in those cases where the service-related disability is a latent or progressive condition that is discovered or aggravated after release from active duty. Therefore, those servicemen who are sufficiently alerted to the possible existence of a disability such that they should either request or appear before a medical review board may be properly precluded from asserting a disability claim more than six years later. *Id.; see generally Miller v. United States*, 175 Ct.Cl. 871, 878–79, 361 F.2d 245, 249–50 (1966).

Thus, the key inquiry here is not whether plaintiff knew he was suffering from PTSD, but rather, whether plaintiff knew or should have known of any underlying symptoms giving rise to a potential disability claim at the time he waived his right to further medical review upon discharge from the Navy in 1974. We note initially that, while several decisions in the predecessor court considered the question of whether the statute of limitations could be tolled where neither party knew of the disability due to the progressive nature of the disability itself, none have thoroughly examined the question of whether a serviceman can be precluded from recovery if he knew or should have known of the alleged ailment. *See Harper v. United States*, 159 Ct.Cl. 135, 139, 310 F.2d 405, 407 (1962) (herniated disk). *See also Proper v. United States*, 139 Ct.Cl. 511, 154 F.Supp. 317 (1957) (multiple sclerosis); *San Millan v. United States*, 139 Ct.Cl. 485, 153 F.Supp. 370 (1957) (cancer); *Patterson v. United States*, 141 Ct.Cl. 435 (1958) (multiple sclerosis). We must, therefore, focus our attention on the events prior to plaintiff's discharge physical in order to determine whether he had adequate notice of his potential disability, and, concomitantly, the potential right to disability retire-

ment pay such that he should have and could have brought suit within six years from his 1974 release. *See Friedman,* 159 Ct.Cl. at 28–29, 310 F.2d at 398. We conclude that, although he may not have known that he was suffering from a condition that would later be characterized as PTSD, plaintiff was, or at least should have been, aware of the underlying symptoms which clearly were not within the normal range of mental health. We hold that this knowledge, when coupled with the notice provided by the Navy's discharge procedure, was enough to trigger the statute of limitations.

The record clearly demonstrates that plaintiff was troubled by psychiatric problems soon after he returned from Vietnam in 1970, difficulties from which he did not suffer prior to enlistment in 1966. Plaintiff states that he first exhibited symptoms of a psychiatric disorder in July, 1971 when he reported to the Beeville Naval Dispensary complaining of visual and auditory hallucinations, and later that month when he was hospitalized at the Naval Hospital in Corpus Christi. His psychiatric difficulties manifested themselves in such a way that plaintiff should have known that he was mentally unfit for duty. First, he was charged with assault by his family, and later found himself choking his wife. This episode resulted in a month long hospitalization in August, 1970. During this time, plaintiff reported intense feelings of guilt, anger, and irritability. In 1982 and 1983, when recalling his situation immediately upon return from Vietnam, plaintiff again reported that his flashbacks began following his return and that he suffered from intrusive thoughts on almost a daily basis. These reports indicate that the symptoms persisted in a pronounced manner through at least 1973, at which time he was again subject to a psychiatric evaluation only eight months before his discharge physical. These facts alone should have been sufficient to notify plaintiff that he suffered from a potentially unfitting condition.

It is circumstantially probative, however, to consider plaintiff's degree of knowledge vis-a-vis the fact that he continued to experience problems after discharge. These continuing problems—inability to interact with others, substance abuse problems, inability to hold a steady job, and, finally, plaintiff's alleged rape of his niece—should have put plaintiff on notice that his problems in the Navy were not merely transitory. The fact that plaintiff now attributes these circumstances to PTSD, when coupled with the similar problems he experienced upon return from Vietnam, corroborates the inference that plaintiff knew or should have known that he was suffering from a disabling condition as a direct result of his service in Vietnam. Moreover, plaintiff's intelligence placed him in a better position to conclude that his condition was not one suffered as a consequence of normal health problems. Thus, assuming, *arguendo,* that plaintiff was not sufficiently aware of his condition at the time of his discharge, his subsequent difficulties should have alerted him of a potential disability claim well in advance of the expiration of the statute of limitations in February, 1980.

Perhaps the most probative evidence of plaintiff's knowledge, prior to February 24, 1980, is his November 24, 1982 application for VA disability benefits, wherein he described his *post-Vietnam* situation. Plaintiff stated that he suffered from nightmares and flashbacks for long periods of time. Moreover, he acknowledged that he "almost killed" his wife on a couple of occasions when he was suffering from a flashback. It was one of these incidents which apparently prompted plaintiff to report to the Corpus Christi Naval Hospital emergency room voluntarily in July, 1971. The fact that he did so is very probative, as it provides an inference that plaintiff was well aware that his then behavior was something other than normal. Plaintiff stated that he "tried to get help," but the treatment he received did not solve the problem. Moreover, he acknowledged that the treatment he received was ineffective and unsatisfactory. Plaintiff's application also suggests the inference that, because the drugs prescribed by the examining physician did not alleviate his condition, he knew that his condition was either more

serious or something other than drug-induced psychosis. These facts, along with the admission that he experienced significant interpersonal problems which he attributed to his condition, all provide the required quantum of substantial and reliable evidence that plaintiff knew or should have known that he had a disability at the time the discharge physical was performed. Such knowledge should have led plaintiff to the realization that he might be entitled to disability pay, and that he should have objected to the examining physician's determination of fitness for full active duty. Thus, the argument upon which plaintiff primarily relies will not arrest the accrual of his claim.

■ The remainder of plaintiff's arguments are equally unpersuasive. The assertions that the physical was only cursory in fashion, that the results were not reviewed by proper Naval authorities, and that a psychiatric evaluation should have been conducted in any event, even if meritorious, do not operate to toll the statute of limitations in this case. Plaintiff does not cite, nor have we found, any authority for these assertions. However, the common thread in all three is the implicit argument that the decision in each case is that an error was committed in the course of the discharge procedure. We find no error such as would prevent the statute of limitations from running on these facts. *See Miller*, 175 Ct.Cl. 871, 879–80, 361 F.2d 245, 250; *Dye v. United States*, 166 Ct.Cl. 540, 545–46 (1964).

■ Plaintiff also seems to suggest that, because the BCNR decided his claim on the merits, the statute of limitations has been either waived or tolled. This argument is not supported by the law. As discussed *supra*, resort to a corrections board such as the BCNR is a permissive post-discharge remedy, and as such, a hearing by that board will not toll the statute of limitations, nor will it give rise to a new cause of action. *See, e.g., Friedman*, 159 Ct.Cl. 1, 310 F.2d 381 (1962).[6] Moreover,

the statute of limitations at issue here is a jurisdictional determination that cannot be waived by a corrections board which chooses to waive defects relating to its own statutory jurisdiction upon a finding that to do so is in the interests of justice pursuant to 10 U.S.C. § 1552. When a corrections board chooses to so act, it is waiving only the statutory requirement, set forth in 10 U.S.C. § 1552(b) (1989), that a claimant file an application for correction within three years after discovery of the error or injustice in the claimant's record. The decision to do so, however, has no bearing whatsoever on the statutory mandate of § 2501 requiring this court to dismiss any claim filed more than six years after the cause of action has accrued. Such is the case here. Thus, the statute of limitations, being neither tolled nor waived, bars plaintiff's claim.

*Conclusion*

Plaintiff either knew or should have known that he suffered from significant medical problems prior to discharge. He also knew that the Navy considered him fit for active duty. Moreover, he was notified at discharge that, unless he challenged that finding, he would be ineligible for future disability benefits. Plaintiff did not contest the determination, nor did he request further medical evaluation. Accordingly, it is clear that plaintiff's cause of action accrued on February 25, 1974, when he waived the right to further review. As a consequence, plaintiff's petition in this court is barred by 28 U.S.C. § 2501 because it was filed well after six years from the date of accrual. Therefore, defendant's motion to dismiss is hereby GRANTED; plaintiff's petition is hereby dismissed. The Clerk shall enter judgment accordingly. No costs.

IT IS SO ORDERED.

---

6. We also note that, even if consideration of a claim by the appropriate corrections board could toll the statute, plaintiff's claim would still be untimely. Plaintiff did not file his applica-

tion with the BCNR until January 31, 1986—12 years after his cause of action accrued and almost six years after the statute of limitations had already expired in February of 1980.