SENTER, Chief Judge.
 

 This is an appeal from a decision of the United States Claims Court dismissing the instant complaint on the ground that it was time barred under 28 U.S.C. § 2501. Pursuant to 28 USC §§ 1491(a)(1) & (2) (1988), the appellant brought a claim for back pay asserting that the Board for the Correction of Naval Records acted arbitrarily in denying the appellant’s application to correct his records to reflect that he had been retired due to disability from the Navy in 1974, and thus he has unlawfully been deprived of disability pay and other benefits. Because we conclude that the trial court erred in applying an incorrect legal standard and
 
 *1559
 
 in sustaining defendant’s motion to dismiss, we reverse and remand for further proceedings.
 

 I. Facts
 

 For present purposes, only a brief summary of the pertinent facts is necessary. A complete statement of the facts relied upon by the trial court in reaching its decision appears at 18 Cl.Ct. 118 (1989). Appellant served in Vietnam from December, 1967, until August, 1970, having volunteered to serve three full tours.
 
 [1]
 
 Although it is not clear exactly when the appellant began to show signs of a psychiatric problem,
 
 [2]
 
 it is undisputed that he voluntarily began seeing Navy doctors in July, 1971, complaining that he was hearing noises and suffering from uncontrollable anxiety which resulted in his abusing his wife. Appellant was eventually hospitalized for about a month in Corpus Christi Naval Hospital, where LCdr Kelley diagnosed the appellant’s problem as drug induced psychosis. This diagnosis was apparently based mainly on Real’s description of his symptoms as being “like flashbacks”, his admission that he had used many different illegal drugs during his stay in Vietnam,
 
 [3]
 
 and his confession that he was taking mescaline, a psychedelic drug, during the early part of his stay in the Corpus Christi hospital. Upon his release from the hospital, Real was pronounced fully recovered. However, in June 1973, appellant again underwent psychiatric examination. On that occasion, Dr. Kelley determined that appellant had such great difficulty dealing with stress that he had the potential to degenerate into a psychotic state under severe stress. Nonetheless, the plaintiff received no further psychiatric examination or treatment prior to his discharge from the service in February, 1974.
 

 At the time of his discharge, appellant was examined by a Navy physician who determined that he was fit for continued active duty and that his psychiatric condition was normal.
 
 [4]
 
 As part of his outpro-cessing, appellant was presented with a copy of a Report of Medical Examination which contained a certification that the ex-aminee had been informed of and understood the provisions of BUMED INSTRUCTION 6120.6. This certification was signed by the appellant. The instruction which appellant certified that he had read and understood informed the service member that he had been found to be fit and that if he felt that he had any serious medical problems he should so inform the examining physician. The instruction further informed the service member that in order to receive a disability pension from the Navy, he would have to be found to be unfit prior to separation.
 

 In the first five years following his discharge, the appellant went through a second marriage and several jobs. He was also arrested approximately ten times— once for obtaining money by false pretenses, once for passing a check on an account bearing insufficient funds, and eight times for traffic offenses. Then in 1979 appellant was convicted of raping his fourteen year old niece and sentenced to serve ten to twenty years in the Nebraska penitentiary.
 

 While serving his prison sentence, appellant was apparently sent to the Lincoln,
 
 *1560
 
 Nebraska, VA hospital for psychiatric evaluation. It was there that he was first diagnosed as suffering from Post Traumatic Stress Disorder (PTSD) in December, 1982. Appellant was paroled to the VA Medical Center in Topeka, Kansas, for treatment of his mental disorder in September, 1983. Since that time, the diagnosis of PTSD has been confirmed on several occasions. Appellant has been determined to be 100 percent disabled due to PTSD by the VA and is receiving both VA and Social Security benefits. On March 31,1986, Real filed an application with the Board for the Correction of Naval Records (BCNR), requesting that his records be corrected to show that he was retired due to disability effective February 24, 1974. Although the Commander of the Navy Medical Command determined that Real had been suffering from PTSD at the time of his discharge, the Central Physical Evaluation Board opined that he had been fit for duty at the time of his discharge and recommended that the application for correction be denied. On May 6, 1987, the BCNR denied the application. This suit was filed on January 31, 1989.
 

 Although the trial court made no mention of it in its statement of facts, it is apparently undisputed that prior to 1980 when it was first included in the American Psychiatric Association’s
 
 Diagnostic and Statistical Manual of Mental Disorders,
 
 PTSD was not a medically recognized diagnosis.
 

 II. Analysis
 

 Suits over which the Claims Court has jurisdiction are “barred unless the petition thereon is filed within six years after such claim first accrues.” 28 U.S.C. § 2501. In dismissing the appellant’s claim, the trial court held that the claim first accrued upon the appellant’s discharge from the Navy in 1974 and that the claim was therefore barred by the statute of limitations.
 

 The generally accepted rule is that claims of entitlement to disability retirement pay do not accrue until the appropriate board either finally denies such a claim or refuses to hear it.
 
 Friedman v. United States,
 
 310 F.2d 381, 159 Ct.Cl. 1 (1962),
 
 cert. denied,
 
 373 U.S. 932, 83 S.Ct. 1540, 10 L.Ed.2d 691 (1963). The decision by the first statutorily authorized board which hears or refuses to hear the claim is the triggering event. If at the time of discharge an appropriate board was requested by the service member and the request was refused or if the board heard the service member’s claim but denied it, the limitations period begins to run upon discharge. A subsequent petition to the corrections board does not toll the running of the limitations period,
 
 id.
 
 310 F.2d at 390, 159 Ct.Cl. at 114-15; nor does a new claim accrue upon denial of the petition by the corrections board,
 
 id.
 
 at 396-98, 159 Ct.Cl. at 25-29. However, “where the Correction Board is not a reviewing tribunal but is the first board to consider or determine finally the claimant’s eligibility for disability retirement, the single cause of action accrues upon the Correction Board’s final decision.”
 
 Id.
 
 at 396,159 Ct.Cl. at 25. Thus, under
 
 Friedman
 
 if the service member had neither requested nor been offered consideration by a retiring board prior to discharge, the later denial of his petition by the corrections board was the triggering event, not his discharge. However, there are circumstances under which the service member’s failure to request a hearing board prior to discharge has been held to have the same effect as a refusal by the service to provide board review.
 
 See Miller v. United States,
 
 361 F.2d 245, 175 Ct.Cl. 871 (1966), and
 
 Huffaker v. United States,
 
 2 Cl.Ct. 662 (1983).
 

 In
 
 Miller,
 
 the plaintiff, an Army officer, submitted his resignation. His superiors ordered him hospitalized for testing and observation. Following a determination that he exhibited a mildly paranoid personality which was not disabling, Miller was informed by letter from the Adjutant General that a review of his records revealed no physical defect, that no retiring board review would be forthcoming, and that he would not be retired due to disability. Suit was filed seventeen years after Miller’s resignation was accepted, but only one year after his petition to correct his records was denied by the Army Board for Correc
 
 *1561
 
 tion of Military Records. The Court of Claims found that although the plaintiff had not requested a retiring board, the Army had considered whether such review was needed; had decided that it was not; and had officially notified the plaintiff that he had no physical defect, that no retiring board was forthcoming, and that he was not eligible for retirement benefits. The court then held that this notification “alerted the plaintiff to the Army’s adverse position concerning any claim that he might have for disability retirement pay, with the same effectiveness as if the notification had been sent in response to a specific request from him that his case be referred to an Army retiring board.”
 
 Miller,
 
 361 F.2d at 249-50, 175 Ct.Cl. at 879.
 

 Huffaker
 
 involved an ex-Marine who was wounded in combat in Vietnam in May, 1968, and spent two months in the hospital recuperating from the injury. He was discharged in August, 1968, following a determination that he was fit for continued duty. No physical evaluation board was convened prior to his discharge, but he certified on his Report of Medical Examination that he had been informed that he had been found to be fit, that he would not be entitled to benefits from the Navy after his discharge, and that he had a right to contest the finding at that time. In 1974, Huffaker applied for and was awarded benefits by the Veterans’ Administration. However, it was not until 1981 that he sought correction of his records by filing a petition before the BCNR. The lawsuit was filed in February, 1982. The court held:
 

 Plaintiff’s failure to act in response to the Navy’s conditioning further medical evaluation upon plaintiff’s objections, and assertion that absent an objection plaintiff would receive no further consideration, amounted to a waiver by plaintiff. In turn, the waiver of any further action triggered the running of the limitations period.
 

 Huffaker, 2
 
 Cl.Ct. at 665. The trial court found the facts of this case to be strikingly similar to those in
 
 Huffaker
 
 and held that Real’s claim accrued upon discharge. Reading
 
 Huffaker
 
 in conjunction with
 
 Friedman,
 
 the court below framed the question as “whether [Real] had adequate notice of his potential disability, and, concomitantly, the potential right to disability retirement pay such that he should have and could have brought suit within six years from his 1974 release.”
 
 Real v. United States,
 
 18 Cl.Ct. 118, 126-27 (1989). While we agree with this statement of the issue, we hold that the Claims Court applied the wrong standard in determining whether Real’s knowledge of his condition was sufficient to justify a finding that he had waived the right to review by the appropriate board prior to discharge.
 

 The lower court noted the existence of several cases decided by the Court of Claims in which that court held that the limitations period did not begin to run upon the service member’s discharge because of the lack of sufficient knowledge of the member’s condition at that time.
 
 See e.g. Harper v. United States,
 
 310 F.2d 405, 159 Ct.Cl. 135 (1962);
 
 Proper v. United States,
 
 154 F.Supp. 317, 139 Ct.Cl. 511 (1957);
 
 Dzialo v. United States,
 
 677 F.2d 873, 230 Ct.Cl. 506 (1982). However, the lower court read these cases as dealing only with the situation where the disease or disability was either unknown to both the service member and the military or was of a progressive nature and worsened significantly after the member was discharged. At least two of these cases cannot be read as being limited to those situations. In
 
 Harper,
 
 the plaintiff injured his back while trying to remove the bodies of two men from a wrecked airplane. His condition was diagnosed as a sprain or strain. Although both Harper and the military doctors knew that he had problems with his back,
 
 [5]
 
 he was discharged without benefit of consideration by a retiring board. In fact, the plaintiff refused a proffered board review for personal reasons. In 1956, over eleven years after Harper’s separation from the service, it was determined that his
 
 *1562
 
 problem was a herniated disc. He applied to the board of corrections in 1958. Suit was filed in May 1959, after the board denied his petition. The court held that his claim did not accrue until the board rendered its final decision. In arriving at this conclusion, the court stated
 

 It is not necessary to determine whether plaintiff would have been precluded from recovery had he known at the time he declined the Retiring Board, or by ordinary diligence could have learned of, the serious nature of his ailment. Neither he nor the doctors fully knew the nature and extent of the disability until [an accurate diagnosis was made].
 

 Harper,
 
 310 F.2d at 407, 159 Ct.Cl. at 139. It is clear that in
 
 Harper
 
 both the service and the plaintiff were aware at the time of the plaintiff’s discharge that a serious condition existed, although neither party was fully aware of just how serious the condition was.
 

 In
 
 Proper
 
 the court found that the plaintiff had been suffering from such symptoms as uncontrollable tremors of the head and hands, double vision, and difficulty using his hands to write for seven years when he was released from active duty in 1945. Like Real, Proper had voluntarily consulted Army physicians concerning his symptoms, but they failed to diagnose his condition. Proper even described his symptoms to the examining physician during his discharge physical. His condition was not properly diagnosed until 1953 when a private physician determined that he was suffering from multiple sclerosis. The final decision denying correction of his military records was made by the Secretary of the Army in 1955. The court held that the limitations period on Proper’s claim started to run upon final decision by the Secretary rather than upon his discharge. Although there was evidence that his condition degenerated following his discharge, it is clear that Proper had suffered from some severe symptoms for several years prior to his discharge. He certainly knew as much about his condition as the plaintiff did in the case
 
 sub judice.
 

 Language from the opinion of the Court of Claims in
 
 Friedman
 
 also suggests that the lower court erred when it concluded that the statute of limitations was tolled only if the condition was either unknown at the time of discharge or worsened substantially afterwards. In that case, the court stated that “veterans who never applied for a Retiring Board because they did not know they were ill or did not appreciate the progressive or serious character of their disease or disability will not be cut off by limitations from pursuing their late-discovered claim before the Correction Board and this court.”
 
 Friedman,
 
 310 F.2d at 402, 159 Ct.Cl. at 34. The court clearly contemplated that there would be some inquiry into the extent of the veteran’s understanding of the seriousness of his condition. A finding that the plaintiff knew of the existence of some mental or physical problem is simply not sufficient in every case to support the conclusion that the limitations period began to run upon discharge. Whether the veteran’s knowledge of the existence and extent of his condition at the time of his discharge was sufficient to justify concluding that he waived the right to board review of the service’s finding of fitness by failing to demand a board prior to his discharge
 
 [6]
 
 must be determined by reference to the statutory requirements for entitlement to such benefits. After all, the ultimate question to be answered is: When did the plaintiff have a claim to disability benefits which could be established in a court?
 
 See Griffin v. United States,
 
 77 F.Supp. 197, 206, 110 Ct.Cl. 330 (1948) (claim accrues at the “time when the claim can be definitely ascertained and set up”).
 

 Upon a determination by the Secretary concerned that a member of a regular component of the armed forces entitled to basic pay ... is unfit to perform the duties of his office, grade, rank, or rating because of physical disability in
 
 *1563
 
 curred while entitled to basic pay, the Secretary may retire the member, with retired pay ... if the Secretary also determines that—
 

 (1) based upon accepted medical principles, the disability is of a permanent nature;
 

 (2) the disability is not the result of the member’s intentional misconduct or willful neglect, and was not incurred during a period of unauthorized absence; and
 

 (3) either—
 

 (A) the member has at least 20 years of service ...; or
 

 (B) the disability is at least 30 percent under the standard schedule of rating disabilities in use by the Veterans’ Administration at the time of the determination; and either—
 

 (i) the member has at least eight years of service computed under section 1208 of this title;
 

 (ii) the disability is the proximate result of performing active duty; or
 

 (iii) the disability was incurred in line of duty in time of war or national emergency.
 

 10 U.S.C. § 1201 (1970). Because the appellant had less than eight years of service at the time of his discharge, he would have been entitled to disability retirement under this section only if he was unfit due to a
 
 permanent
 
 disability which was not the result of his own misconduct and which was “service-connected”. When the state of Real’s knowledge of his condition is measured with regard to these requirements, it is highly questionable whether he should be found to have had either actual or constructive knowledge that he was entitled to disability benefits. There is no indication in the record before this court that Real could Get alone should) have known that he was suffering from a permanently disabling disorder in 1974. Furthermore, the only diagnosis of the origin of his condition that existed in 1974 was LCdr Kelley’s determination that it was drug-induced. Absent some ground for belief that this determination was wrong, the plaintiff could not have known that he might be entitled to disability benefits because he would not have been entitled to such benefits if his condition resulted from his abuse of drugs. Although Real now contends that he had not used all of the illegal drugs which his hospital records show that he had taken while in Vietnam, he still admits to excessive use of amphetamines during his stay in that country.
 

 Although the lower court correctly noted that there were similarities between this case and the facts involved in
 
 Huffaker,
 
 the court did not consider the very substantial differences between the two cases. In
 
 Huffaker
 
 the service member suffered from a gunshot wound. There was no evidence that either the veteran or the service was confused about the nature or the extent of the disability which resulted from this wound. In this case, there is substantial evidence that no one knew exactly what was wrong with Real or understood the full extent of his mental problem at the time of his discharge or whether it was service-connected.
 

 III. Conclusion
 

 The decisions in
 
 Huffaker
 
 and
 
 Miller
 
 can be reconciled with
 
 Proper
 
 and
 
 Harper
 
 if the latter decisions are read as requiring that the sufficiency of the veteran’s knowledge of his condition be gauged by refer-1 ence to the statutory requirements for disability retirement. Because the lower court did not consider those requirements in finding that Real knew enough about his condition to be held to have waived the right to challenge the finding that he was not entitled to disability benefits, this case must be remanded so that the court may give full consideration to the statute of limitations question in light of this court’s ruling. On remand the trial court should also consider whether a motion to dismiss is the most appropriate format for making the fact-intensive inquiry which is required for resolution of the questions before it.
 

 IV. Costs
 

 Costs to appellant.
 

 REVERSED AND REMANDED.
 

 [1]
 

 . Appellant sought to extend his stay in Vietnam for yet another term beyond the 33 months he had been there, but the Navy refused to allow another extension.
 

 [2]
 

 . There is some evidence that Real experienced at least one psychotic episode while in Vietnam which caused him to be returned from a mission under guard. Corrected Joint Appendix, p. 61.
 

 [3]
 

 . In fact, the appellant’s hospital record contained his apparent admission to the heavy use of several drugs which were not even known to be generally available in Vietnam. For this reason a VA physician later concluded that either there had been a clerical error in the recording of answers or there had been outright falsification of the record.
 

 [4]
 

 . It is not clear from the record whether the physician who conducted the pre-discharge physical also conducted some type of psychiatric examination. It appears that he did not. However, it is worth noting that the doctor who "found" that Real was mentally normal in February, 1974, was the same physician who had referred him for psychiatric consultation in July, 1972 and again in June, 1973.
 

 [5]
 

 . In fact, Harper’s back problems were so severe prior to discharge that the service determined that he was no longer fit for overseas duty.
 

 [6]
 

 . This assumes that the service member has been informed that the failure to demand a board prior to discharge will result in his being ineligible for disability benefits from the service.