# United States Court of Appeals for the Federal Circuit

---

**LEWIS B. JONES,**
*Plaintiff-Appellant*

**v.**

**UNITED STATES,**
*Defendant-Appellee*

---

2020-2298

---

Appeal from the United States Court of Federal Claims in No. 1:20-cv-00520-MMS, Judge Margaret M. Sweeney.

---

OPINION ISSUED:  August 11, 2021
OPINION MODIFIED:  March 31, 2022*

---

JONATHAN HERSTOFF, Haug Partners LLP, New York, NY for plaintiff-appellant. Also represented by JASON ARI KANTER.

JAMES WILLIAM POIRIER, I, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for defendant-appellee.   Also

---

\*   This opinion has been modified and reissued following a petition for rehearing filed by Appellant.

represented by BRIAN M. BOYNTON, MARTIN F. HOCKEY, JR., FRANKLIN E. WHITE, JR.

———————————

Before NEWMAN, SCHALL, and DYK, *Circuit Judges*.

Opinion for the court filed by *Circuit Judge* SCHALL.

Dissenting opinion filed by *Circuit Judge* NEWMAN.

SCHALL, *Circuit Judge*.

Lewis B. Jones appeals the decision of the United States Court of Federal Claims that dismissed his amended complaint for lack of jurisdiction. *Jones v. United States*, 149 Fed. Cl. 703 (2020) ("*Jones*"). The Court of Federal Claims dismissed the amended complaint on the ground that the claim stated therein was barred by the six-year statute of limitations set forth at 28 U.S.C. § 2501. For the reasons stated below, we affirm.

BACKGROUND

I.

There are two systems that provide disability compensation to former members of the armed services. Both are relevant to this case. First, Section 1201 of Title 10 provides that military personnel who become disabled in service with at least 20 years of service or at least a 30% disability rating are entitled to receive military retirement pay ("disability retirement pay") from the Department of Defense. Under this system, a service member who is physically disabled while "entitled to basic pay" is eligible to apply for military disability retirement, which is based on the service member's fitness for military duty. 10 U.S.C. § 1201 (1988). Second, under Section 1110 of Title 38 (formerly § 310), veterans are also entitled to receive veterans benefits if they can establish the existence of service-connected disability. Under this system, after discharge, a former service member can seek compensation from the

Department of Veterans Affairs ("VA"). This system is based upon a veteran's capacity to function and be compensated in the civilian world. *See* 38 U.S.C. § 355 (1988) ("The ratings shall be based, as far as practicable, upon the average impairments of earning capacity resulting from such injuries in civil occupations."); 38 U.S.C. § 1155 (2018); *see also McCord v. United States*, 943 F.3d 1354, 1357–58 (Fed. Cir. 2019) (discussing the interplay between military disability pay and the system of disability benefits administered by the VA).

## II.

The pertinent facts are not in dispute. Mr. Jones entered active-duty service in the United States Air Force ("Air Force") on January 29, 1981. *Jones*, 149 Fed. Cl. at 705. Subsequently, in 1982, while serving in Germany, he was struck in the eye by the door of an armored personnel carrier. *Id.* As his service continued, this injury resulted in a number of sequelae, including intense headaches. *Id.* In addition, over time, as a result of the injury, it became increasingly difficult for Mr. Jones to perform his duties. *See id.*

In October of 1988, Mr. Jones was referred to a Medical Evaluation Board ("MEB").[1] A "Narrative Summary (Clinical Resume)" dated October 16, 1988, which was before the MEB, reflects that Mr. Jones had developed "intermittent right cranial nerve 4th palsy associated with chronic right retro-orbital stabbing pain, usually occurring during the late afternoon or night." Suppl. App. 24. According to the

---

[1]   An MEB determines the nature of a service member's disability by reviewing the service member's medical records. *Barnick v. United States*, 591 F.3d 1372, 1375 (2010); *see* AFR 35-4 § 1-2.b (1985) ("The MEB is composed of three physicians who review all medical records and make appropriate recommendations.").

summary, a psychiatric consultant felt that Mr. Jones suf-
fered from "psychological factors effecting a physical illness
and [the consultant had] recommended psychometric test-
ing." *Id.* at 25.  The summary also stated that, in the past,
Mr. Jones's "[h]eadaches would occur three to four times a
year and last one to three days and were only relieved by
alcohol or sleep," and that Mr. Jones had been prescribed a
variety of medications without relief.  *Id.* at 24.  The sum-
mary further stated that, in the three months prior to the
MEB proceedings, Mr. Jones "noted increasing frequency
and duration of headaches (up to two to three times a
day[ ]"), and that "[i]n the last two weeks, he noted a nearly
constant headache which was relieved only with repetitive
doses of intramuscular Demoral." *Id.*

On November 18, 1988, the MEB issued a report refer-
ring Mr. Jones's case to a Physical Evaluation Board
("PEB"), to consider whether Mr. Jones's medical condition
rendered him physically unfit to serve in the Air Force.  *See
Jones*, 149 Fed. Cl. at 705–06 & n.2.[2]  On November 22,
1988, Mr. Jones provided remarks on a "Statement of Rec-
ord Data," in which he stated that he had been aware of the
MEB and the possibility of his discharge for over six years
and that his condition had "worsened even more since the
M.E.B. evaluation." Suppl. App. 28–29.  He indicated that
he had "constant temporal and eye pain which varie[d] in
severity several times a day that [was] incapacitating." *Id.*
at 28.  Mr. Jones expressed that "[p]sychologically," he felt
"deformed, miserable" and possessed "zero tolerance to
stress or anxiety," and that he had to "avoid stressful

---

[2]    A PEB determines a service member's fitness for
duty and entitlement to disability retirement pay or sever-
ance pay after an MEB finds the service member does not
meet the military's standards for retention under its regu-
lations. *Chambers v. United States*, 417 F.3d 1218, 1225
n.2 (Fed. Cir. 2005); *see generally* AFR 35-4 § 3 (1985).

situations and other things [that] aggravate [his] injury." *Id.* at 28–29. Mr. Jones also indicated that he had "adjusted much of the pain into [his] personality," having become "impatient" and "irritable." *Id.* at 29. He stated: "My injury has certainly hindered my Air Force career. In the event of retirement, my injury will positively hinder civilian employment. This undoubtedly creates a hardship." *Id.* at 28. In a report dated December 6, 1988, the PEB recommended that Mr. Jones be discharged with severance pay based on a 10% disability rating for "Post traumatic pain syndrome manifest[ing] as headaches." *Jones*, 149 Fed. Cl. at 706. Thus, the PEB did not award Mr. Jones a 30% disability rating, which would have qualified him for disability retirement pay.

Mr. Jones agreed with the PEB's recommendation, and, on December 29, 1988, he was honorably discharged from the Air Force with severance pay, but with no disability retirement pay. In 1989, his discharge was amended to reflect the fact that his injury was combat-related. *Id.*

In due course, Mr. Jones sought disability benefits from the VA. As a result, over a period of fifteen years, the VA issued various disability ratings or denials of disability claims in response to claims brought by Mr. Jones. *Id.* Eventually, effective December 8, 2017, the VA awarded Mr. Jones a 100% disability rating based on a combination of conditions, including headaches, traumatic brain injury ("TBI"), Post-Traumatic Stress Disorder ("PTSD"), and a number of other physical and mental limitations. *Id.*

Upon receiving this 100% disability rating from the VA, on February 26, 2018, Mr. Jones petitioned the Air Force Board for Correction of Military Records ("AFBCMR") for changes to his record that would entitle him to a disability retirement dating back to 1988, when he was discharged. *Id.* Before the AFBCMR, Mr. Jones also sought disability retirement pay and benefits pursuant to

10 U.S.C. § 1201. In January of 2020, the AFBCMR denied Mr. Jones's petition. *Id.*

## III.

On April 23, 2020, Mr. Jones filed a complaint in the Court of Federal Claims seeking review of the AFBCMR decision. Thereafter, on July 1, 2020, he filed an amended complaint. *Jones*, 149 Fed. Cl. at 706.

On August 25, 2020, the Court of Federal Claims granted the government's motion to dismiss pursuant to its Rule 12(b)(1). The court concluded that it lacked jurisdiction because Mr. Jones's claim for disability retirement pay and benefits pursuant to 10 U.S.C. § 1201 was barred by the six-year statute of limitations set forth at 28 U.S.C. § 2501. *Id.* at 707–08.

The Court of Federal Claims determined that Mr. Jones's claim for disability retirement pay and benefits accrued on December 29, 1988, the date of his discharge from the Air Force. *Id.* at 708. As noted above, Mr. Jones's discharge followed the determination of the PEB earlier in December that Mr. Jones should be separated, and not retired, due to his disabling trauma manifesting as headaches. Having determined that Mr. Jones's claim accrued upon his discharge, the court ruled that it was time-barred. The court stated:

> [b]ecause Mr. Jones did not file suit in this court within six years of his separation from the Air Force in 1988, but instead filed suit more than thirty years later, his claim for disability retirement pay and benefits is barred by 28 U.S.C. § 2501.

*Id.* The court also ruled that Mr. Jones could not rely on the accrual suspension rule, under which "the accrual of a claim against the United States is suspended, for purposes of 28 U.S.C. § 2501, until the claimant knew or should have known that the claim existed." *Id.* at 709 (quoting

*Martinez v. United States*, 333 F.3d 1295, 1319 (Fed. Cir. 2003) (en banc)). According to the court, the "amended complaint establishe[d] a record of Mr. Jones's knowledge of his various health conditions in the months leading up to his discharge," and thus "[t]he facts of this case do not show that Mr. Jones's disabling health problems were inherently unknowable in 1988." *Id.* In reaching its decision, the court cited to *Young v. United States*, 529 F.3d 1380, 1385 (Fed. Cir. 2008), as supporting the proposition that "accrual of a military pay claim should not be suspended where the service member's medical condition was not unknowable before his discharge, notwithstanding the fact that examinations by the VA in later years provided more information about his condition." *Jones*, 149 Fed. Cl. at 710.

Based upon these findings, the court granted the government's motion to dismiss and directed the entry of judgment accordingly. Following entry of judgment, Mr. Jones timely appealed. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(3).

DISCUSSION

I.

Whether the Court of Federal Claims has jurisdiction over a claim is a question of law that we review de novo. *Biafora v. United States*, 773 F.3d 1326, 1334 (Fed. Cir. 2014). We review the court's findings of fact relating to jurisdictional issues for clear error. *Id.*

II.

Mr. Jones brought suit in the Court of Federal Claims under the Tucker Act, 28 U.S.C. § 1491, which authorizes certain actions for monetary relief against the United States and waives the government's sovereign immunity for those actions. *Fisher v. United States*, 402 F.3d 1167, 1172 (Fed. Cir. 2005). Mr. Jones claims he is entitled to disability retirement pay under 10 U.S.C. § 1201, a money-

mandating source of substantive law on which he may base his Tucker Act suit. *See id.* at 1174. Section 1201 provides that, upon the Secretary's determination that a service member is "unfit to perform the duties of [the member's] office, grade, rank, or rating because of physical disability incurred while entitled to basic pay," the Secretary may retire the service member if the Secretary also makes certain determinations. 10 U.S.C. § 1201 (1988). Relevant to the facts here is a service member's eligibility for disability retirement pay upon the Secretary's determination that "the disability is at least 30 percent under the standard schedule of rating disabilities in use by the Veteran's Administration at the time of the determination." *Id.*[3]

To fall within the jurisdiction of the Court of Federal Claims, a claim against the United States filed in that court must be "filed within six years after such claim first accrues." 28 U.S.C. § 2501 (1988); *see also John R. Sand & Gravel Co. v United States*, 552 U.S. 130, 132–35 (2008). Generally, "[a] cause of action cognizable in a Tucker Act suit accrues as soon as all events have occurred that are necessary to enable the plaintiff to bring suit, *i.e.*, when 'all events have occurred to fix the Government's alleged liability, entitling the claimant to demand payment and sue . . . for [the plaintiff's] money.'" *Martinez*, 333 F.3d at 1303 (quoting *Nager Elec. Co. v. United States*, 368 F.2d 847, 851 (Ct. Cl. 1966)). In military disability retirement cases, however, claim accrual is delayed until mandatory administrative proceedings are completed under the so-called "first competent board rule." That rule provides that a service member's claim does not accrue until final action is taken by the first board competent to decide the matter of

---

[3]    Section 1201 has since been amended to reflect the change in name of the "Veteran's Administration" to the "Department of Veterans Affairs." *See* 10 U.S.C. § 1201 (2021). We refer to both as "VA."

entitlement, or upon refusal of a service member's request for such a board. *Friedman v. United States*, 310 F.2d 381, 395–96 (1962). As our court explained in *Real v. United States*, 906 F.2d 1557 (Fed. Cir. 1990):

> The generally accepted rule is that claims of entitlement to disability retirement pay do not accrue until the appropriate board either finally denies such a claim or refuses to hear it. The decision by the first statutorily authorized board which hears or refuses to hear the claim is the triggering event. If at the time of discharge an appropriate board was requested by the service member and the request was refused or if the board heard the service member's claim but denied it, the limitations period begins to run upon discharge. A subsequent petition to the corrections board does not toll the running of the limitations period; nor does a new claim accrue upon denial of the petition by the corrections board. However, where the Correction Board is not a reviewing tribunal but is the first board to consider or determine finally the claimant's eligibility for disability retirement, the single cause of action accrues upon the Correction Board's final decision.

*Real*, 906 F.2d at 1560 (citing *Friedman*, 310 F.2d at 390, 396–98) (internal quotation marks omitted); *accord Chambers v. United States*, 417 F.3d 1218, 1221, 1224–25, 1227 (Fed. Cir. 2005); *Martinez*, 333 F.3d at 1311–15.

A PEB is an appropriate board to make a final disability determination, and its decision is adequate to trigger the running of the statute of limitations. *See Chambers*, 417 F.3d at 1224–25 & n.2; *Schmidt v. United States*, 89 Fed. Cl. 111, 120 (2009) ("An 'informal' [Central Physical

Evaluation Board] decision is sufficient to start the running of the statute of limitations.").[4]

On December 6, 1988, the Air Force PEB recommended severance pay based upon a 10% disability rating for Post-traumatic pain syndrome manifesting as headaches.[5]

---

[4]    The December 6, 1988 PEB report is marked "informal." Suppl. App. 26. A decision by an informal PEB can start the running of the statute of limitations when a plaintiff waives his or her appeal to a formal PEB. *See Schmidt*, 89 Fed. Cl. at 120–21; *Fuller v. United States*, 14 Cl. Ct. 542, 544–45 (1988) (holding that the plaintiff's claim accrued when he waived his right to a hearing before a PEB after a Navy Board of Medical Survey declared him unfit for service); *cf. Gant v. United States*, 417 F.3d 1328, 1332 (Fed. Cir. 2005) (concluding that, by waiving his right to a formal PEB hearing and accepting the findings of the preliminary PEB, "Mr. Gant knowingly and voluntarily accepted the finding of unfitness for duty and the disability rating assigned to him by the preliminary PEB[,] and that he ha[d] not shown any reason that he should be permitted to challenge those determinations in subsequent administrative or judicial proceedings").

The record reflects that Mr. Jones "agreed with the findings and recommended disposition of the [informal PEB]" on December 20, 1988. Suppl. App. 80. Mr. Jones does not argue on appeal, nor did he argue before the Court of Federal Claims, that he did not waive his appeal to a formal PEB, so that the informal PEB report could not trigger the running of the statute of limitations. *See id.* at 9.

[5]    The schedule of rating disabilities in use by the VA for migraines, available at 38 C.F.R. § 4.124a, reads now as it did in 1988. It provides a 10% rating for migraines "[w]ith characteristic prostrating attacks averaging one in 2 months over last several months," a 30% rating for migraines "[w]ith characteristic prostrating attacks occurring

Thereafter, on December 29, 1988, Mr. Jones was honorably discharged with severance pay, but no disability retirement pay. Under the controlling first board rule, Mr. Jones's claim for disability retirement pay would properly be viewed as accruing in December of 1988. As a result, it would be barred by the six-year statute of limitations because Mr. Jones did not file suit in the Court of Federal Claims until April 23, 2020. Mr. Jones, however, contends that his claim did not accrue in December of 1988 and that his suit in the Court of Federal Claims was, in fact, timely filed. We turn now to the arguments that Mr. Jones makes in that regard.

## III.

We understand Mr. Jones to make two main arguments on appeal. First, he argues that his claim for disability retirement pay could not accrue until both (1) the Air Force determined that he was entitled to a 30% disability rating and (2) a competent board denied his request for disability retirement pay. Before those two conditions were met, he asserts, he could not bring suit and obtain relief, and therefore the statute of limitations did not begin to run in 1988.

Mr. Jones's second argument is that the Court of Federal Claims erred when it held the accrual suspension rule did not apply to his claim. Mr. Jones asserts that the PEB's discharge decision in 1988 was founded solely on his headaches (post-traumatic pain syndrome), and that his later, separate diagnoses of TBI and PTSD were not merely "more information" about his headaches. *See, e.g.*, Appellant's Informal Br. 4, 8–13, 16–17; Reply Br. 4–6; *Jones*,

---

on an average once a month over last several months," and a 50% rating for migraines "[w]ith very frequent completely prostrating and prolonged attacks productive of severe economic inadaptability." 38 C.F.R. § 4.124a.

149 Fed. Cl. at 710. He contends that, due to the state of medical technology in 1988, his TBI and PTSD could not be diagnosed or accounted for in his disability rating at the time of his discharge, and therefore they were "inherently unknowable latent injuries." *See* Appellant's Informal Br. 12–18, Reply Br. 1. Mr. Jones takes issue with the Court of Federal Claims's reliance on *Young v. United States*. Although he admits that he "knew he had serious health issues" in 1988, Appellant's Informal Br. 15, Mr. Jones asserts that he was not aware of his mental impairments prior to discharge, *id.* at 14, and thus he had no reason to question the Air Force medical professionals' diagnosis of headaches and his 10% rating until 2017, when he was diagnosed with TBI and PTSD. *Id.* at 10, 13–15. Accordingly, we understand his second argument to be that accrual of his claim should have been suspended because in 1988 he could not reasonably have known that he was suffering from, and would later be diagnosed with, ailments that would provide him with a disability rating percentage sufficient to qualify him for disability retirement pay. *Id.* at 15 (Only "[w]hen the plaintiff went through examinations, diagnosis and [received] treatment for TBI and PTSD . . . and proper medications did the cause of action reveal itself.").

The government responds that Mr. Jones's claim for disability retirement pay under § 1201 accrued when he was separated from service in 1988, and that the accrual suspension rule does not apply. This is so, the government argues, because in 1988 "Mr. Jones knew that he had been injured during military service, knew that he had suffered resulting symptoms that impaired his ability to work, and knew both that a [PEB] had considered his eligibility for a medical retirement, and that the Air Force had decided *not* to award him a medical retirement." Appellee's Informal Br. 15, 17–20. The government disagrees that the PEB considered only Mr. Jones's headaches, instead noting that the PEB had before it evidence of both his physical and

psychological injuries. *Id.* at 12–16. There is no requirement, the government argues, that Mr. Jones be able to refer to his psychological symptoms as "PTSD" to bring suit in 1988. *Id.* at 20. Instead, he merely needed to show "that he was injured during military service, and that, as a result, he qualified for a rating of 30 percent disability." *Id.* at 20–22.

We address Mr. Jones's arguments in turn.

## IV.

First, we agree with the government that Mr. Jones's claim accrued in December of 1988. The PEB, a board competent to decide the issue of his disability, had before it evidence pertaining to Mr. Jones's injuries from being struck in the head, including his headaches and his potential psychological claims, and the Board discharged him with a 10% disability rating. *See Real*, 906 F.2d at 1560 ("The decision by the first statutorily authorized board which hears or refuses to hear the claim is the triggering event."). Accordingly, it was in 1988 that all events necessary to fix the government's alleged liability occurred, entitling Mr. Jones to bring suit and demand payment. Hence, his claim accrued upon his discharge in December of 1988. *See Martinez*, 333 F.3d at 1303.

That he was not yet assigned a 30% disability rating does not mean Mr. Jones's claim did not accrue. The Court of Federal Claims hears cases where a service member challenges a board's rating with respect to disability retirement. *See, e.g.*, *McCord*, 943 F.3d at 1356 (noting that a service member who was discharged with a 20% disability rating brought suit in the Court of Federal Claims after he unsuccessfully applied for a correction); *Casiano v. United States*, 141 Fed. Cl. 528, 536–40 (2019) (considering a challenge to boards' 20% ratings and denial of disability retirement benefits by two plaintiffs); *Rock v. United States*, 112 Fed. Cl. 113, 132–33 (2013) (affirming a PEB's decision granting a service member a disability rating of 20%);

*Colon v. United States*, 35 Fed. Cl. 516, 520 (1996) (holding that the plaintiff's cause of action accrued upon his discharge from the Army after a PEB made a final determination assigning him a 20% disability rating); *Randolph v. United States*, 31 Fed. Cl. 779, 781–84 (1994) (remanding to a PEB for reconsideration of the PEB's assignment of a 10% rating).

We understand Mr. Jones's argument that in 1988 the Secretary had not determined that he was entitled to a 30% rating to be a contention that his claim did not accrue because he could not possibly have received a 30% rating in 1988, given that his headaches were only rated at 10%. We note, however, that the PEB had before it the MEB's report and Mr. Jones's statements, which outlined the severity and frequency of his headaches, as well as his other physical and psychological injuries. Mr. Jones argues that later medical advances were necessary for the Board to make a determination. While the Secretary may certainly consider such advances as he "from time to time readjust[s the] schedule of ratings in accordance with experience," 38 U.S.C. § 1155, statute forecloses Mr. Jones' argument by requiring that eligibility for disability retirement be assessed using "the standard schedule of rating disabilities . . . at the time of the determination." 10 U.S.C. § 1201.

Because, at the time of his discharge, an appropriate board heard his claim but denied it, the limitations period began to run upon Mr. Jones's discharge. *See Real*, 906 F.2d at 1560. The VA's later assignment of a higher disability rating, combined with his proceedings before the Correction Board, did not provide him with a new claim. *Id.*; *see also Friedman*, 310 F.2d at 396 *(*"Once a final decision is had, adverse determinations by other boards, including the Correction Board, do not give rise to a new cause of action.").

V.

We turn now to Mr. Jones's argument regarding the accrual suspension rule. As noted above, that rule provides that "the accrual of a claim against the United States is suspended, for purposes of 28 U.S.C. § 2501, until the claimant knew or should have known that the claim existed." *Martinez*, 333 F.3d at 1319. A plaintiff who shows that his or her injury was "inherently unknowable" at the accrual date can obtain the benefit of such a suspension. *Id.* (citation omitted).[6] The accrual suspension rule is "strictly and narrowly applied." *Id.* (quoting *Welcker v. United States*, 752 F.2d 1577, 1580 (Fed. Cir. 1985)). The party whose claim is otherwise barred by the statute of limitations has the burden of proving that the facts underlying its claim were inherently unknowable. *Japanese War Notes Claimants Ass'n v. United States*, 373 F.2d 356, 359 (Ct. Cl. 1967). We agree with the Court of Federal Claims that Mr. Jones did not make such a showing.

Mr. Jones's remarks on the November 22, 1988 Statement of Record Data indicate not only that he understood that his injuries were serious, but also that he understood that his injuries were sufficiently severe that he was being evaluated for discharge and retirement:

I've been aware of the Medical Evaluation Board for over six years. I first learned about the M.E.B. through threats from doctors. I was warned complaining too much about my injury would lead to M.E.B. discharge action. . . . My condition has

---

[6] Alternatively, to achieve the benefit of the accrual suspension rule, a plaintiff may show "that the defendant has concealed its acts with the result that plaintiff was unaware of their existence or it." *Martinez*, 333 F.3d at 1319 (citation omitted). This aspect of the rule is not at issue in this case.

worsened and has worsened even more since the
M.E.B. evaluation. Medicine and surgery are inap-
plicable in treating my injury. In the past I've
taken some types of medicine for pain. Presently,
I'm not taking anything and I suffer during the at-
tacks with no way to relieve the pain. I have con-
stant temporal and eye pain which varies in
severity several times a day that are incapacitat-
ing. I'm physically deformed at the neck, I have
diplopia and my equilibrium is off. Psychologically,
I feel deformed, miserable, and I possess zero toler-
ance to stress. I must avoid stressful situations
and other things which aggravate my injury such
as certain foods, arguments and other things which
may irritate me. . . . My injury has certainly hin-
dered my Air Force career. In the event of retire-
ment, my injury will positively hinder civilian
employment. This undoubtedly creates a hardship.

Suppl. App. 28; *see also id.* at 29.

In *Young*, our court affirmed the Court of Federal
Claims's decision finding that a service member's claim for
military pay was barred by the six-year statute of limita-
tions. 529 F.3d at 1382. We agreed with the Court of Fed-
eral Claims that Mr. Young could not take advantage of the
accrual suspension rule because, at the time of his dis-
charge, he "knew he had been treated for abdominal prob-
lems repeatedly during his Army service," even if he did
not know at that time that his injury would render him dis-
abled four years later. *Id.* at 1385. Similarly, that Mr.
Jones could not have known in 1988 that he would later be
diagnosed with TBI and PTSD and therefore be eligible for
a higher rating under the VA's rating schedule does not de-
tract from either (1) his understanding in 1988 that he was
suffering from significant physical and psychological inju-
ries resulting from the armored personnel carrier door in-
cident; or (2) his understanding in 1988 that his injuries

were sufficiently serious that he was being considered for military retirement.

We do note that cases from our court and our predecessor court illustrate that service members who never sought review by a board before discharge because they did not know or appreciate the progressive or serious nature of a disability will not be precluded by the statute of limitations from pursuing a late-discovered claim for disability retirement. *See Friedman*, 310 F.2d at 402; *Real*, 906 F.2d at 1562–63 ("The [*Friedman*] court clearly contemplated that there would be some inquiry into the extent of the veteran's understanding of the seriousness of his condition.") (remanding for consideration of whether Mr. Real knew enough about his condition to be held to have the right to challenge the finding that he was not entitled to disability benefits); *Chambers*, 417 F.3d at 1226–27 (holding that the record lacked evidence that Mr. Chambers knew that he was entitled to disability retirement at discharge and so his cause of action did not accrue until a corrections board denied his claim). Similarly, our predecessor court held that a service member's claim had not "ripened" even though he was offered a retirement board because, at the time of his discharge, his later-diagnosed serious injury, a herniated disc, had been misdiagnosed as a sprain or strain, and because there had been no final adverse action by the government. *Harper v. United States*, 310 F.2d 405, 406–08 (Ct. Cl. 1962). To be clear, a disability that progressively worsens over time is not a basis for suspending the accrual of a claim for disability retirement. The only relevant point in time for a disability retirement determination is "the time of the determination." 10 U.S.C. § 1201(b)(3)(B). The accrual suspension rule is only implicated if the individual was unaware of the nature of the disability at that time. However, those are not the facts of this case.

Not only did Mr. Jones have a board hearing, but the record demonstrates that he knew the serious nature of his disability and that he was being considered for retirement.

*See Purvis v. United States*, 77 F. App'x 512, 514 (Fed. Cir. 2003) ("While a serviceman who did not appreciate the progressive or serious nature of his disability will not be precluded by the limitations period from pursuing his late-discovered claim, . . . that scenario is not applicable here because Mr. Purvis was sufficiently concerned about the extent of his injuries to apply for disability in 1974."). Mr. Jones was aware of the "incapacitating" nature of his physical and psychological injuries and believed that they would "positively hinder" his future employment.[7] Suppl. App. 28. Accordingly, he had an understanding of the seriousness of his condition that was sufficient to justify a conclusion that he could have sought earlier redress, and we cannot say the facts underlying his claim were "inherently unknowable." *See Real*, 906 F.2d at 1561–62; *see also Young*, 529 F.3d at 1385 ("It is a plaintiff's knowledge of the facts of the claim that determines the accrual date.") (first citing *United States v. Kubrick*, 444 U.S. 111, 122 (1979), then citing *Catawba Indian Tribe v. United States*, 982 F.2d 1564, 1572 (Fed. Cir. 1993)).

We thus agree with the Court of Federal Claims that Mr. Jones cannot claim that his injury was "inherently unknowable."

## VI.

Mr. Jones, who reasonably understood his condition to be disabling in 1988, cannot use his later diagnoses of TBI and PTSD or his subsequent proceedings before the corrections board to obviate the 1988 accrual of his claim and suspend the running of the statute of limitations from that time. To grant Mr. Jones relief in the circumstances of this

---

[7]    We note that, in 1988, disorders characterized as "psychological factors affecting physical conditions" were ratable as "psychoneurotic disorders" in the VA's disability rating system. *See* 38 C.F.R. § 4.150 (1988).

case would, we believe, impermissibly open the door to the resurrection of previously decided disability retirement claims simply because medical knowledge advanced after the claims first were decided by the military service involved. *See* 10 U.S.C. § 1201 (requiring that the Secretary assess a service member's eligibility for disability retirement using the "standard schedule of rating disabilities in use by the [VA] *at the time of the determination*.") (emphasis added). In addition, we cannot escape the conclusion that such an approach could have the unintended consequence of undermining the careful balance that Congress struck between the disability retirement systems of the several armed services and the veterans benefit system administered by the VA. *See* BACKGROUND, Part I, *supra.*

We have considered Mr. Jones's additional arguments and have found them all to be without merit.

## CONCLUSION

For the foregoing reasons, we affirm the decision of the Court of Federal Claims dismissing Mr. Jones's amended complaint for lack of jurisdiction.

## **AFFIRMED**

### COSTS

No costs.

# United States Court of Appeals
# for the Federal Circuit

---

**LEWIS B. JONES,**
*Plaintiff-Appellant*

**v.**

**UNITED STATES,**
*Defendant-Appellee*

---

2020-2298

---

Appeal from the United States Court of Federal Claims in No. 1:20-cv-00520-MMS, Judge Margaret M. Sweeney.

---

NEWMAN, *Circuit Judge*, dissenting.

I respectfully dissent. The court misapplies the principles of limitation statutes, and holds that Mr. Jones' claim became time-barred during the period when, by statute, he could not have brought the claim.[1] A period of limitations does not accrue when the claim could not have been brought. "'Accrue' is '[t]o come into existence as an enforceable claim or right.'" *Shoshone Indian Tribe of Wind River Reserve, Wyo. v. United States*, 51 Fed. Cl. 60, 67 n.8 (2001) (quoting Black's Law Dictionary 21 (7th ed. 1999). "The

---

[1]  *Jones v. United States*, 149 Fed. Cl. 703 (2020) ("Fed. Cl. Op.").

term accrue in the context of a cause of action means to arrive to commence." *Id.*

By statute, Mr. Jones could not have established entitlement to disability retirement at discharge in 1988 with 10% disability. From the court's ruling that the statute of limitations accrued from discharge, and that he is time-barred from seeking disability retirement although 100% disabled, I respectfully dissent.

## A

### *Mr. Jones was rated 10% disabled and not eligible for disability retirement at the time of his discharge*

Lewis B. Jones was honorably discharged from the United States Air Force in 1988 after eight years of service, because of an eye/head injury and ensuing complications. As recommended by an Air Force Physical Evaluation Board (PEB) and Medical Evaluation Board (MEB), he received severance pay and a 10% disability rating. By statute, he was not eligible for disability retirement with less than 30% disability:

10 U.S.C. § 1201(b).

**Required Determinations of Disability**

\* \* \*

(3)(B) the disability is at least 30 percent under the standard schedule of rating disabilities in use by the Department of Veterans Affairs at the time of the determination.

Air Force Instruction 36-3212 *Physical Evaluation for Retention, Retirement and Separation*, implements the statute, and includes:

¶ **3.17. Recommended Disposition**. Upon review and evaluation of a disability case, the PEB

recommends one of the following dispositions. (See Table 3.1 for recommended disposition decision rules):

\* \* \*

**¶ 3.17.2.  Permanent Disability Retirement**. Applies to service members who have been found unfit, the condition is stable and permanent, and the total disability rating is 30 percent or greater or the service member has 20 years or more service computed under 10 U.S.C. § 1208 regardless of the combined compensable disability rating.

Mr. Jones did not appeal the 10% disability rating at discharge.  However, as the years passed his disability increased, and in 2005 the VA rated him 50% disabled.  In 2017 he was rated 100% disabled.  In 2018 Mr. Jones filed a petition with the Air Force Board for Correction of Military Records (AFBCMR or "Board"), seeking disability retirement.

The AFBCMR denied the petition, holding that an increase in disability evaluation after discharge does not warrant changing the compensation awarded at the time of discharge, and thus that disability retirement benefits are not available to Mr. Jones.  The Board stated:

Under the DVA system (Title 38, U.S.C.), the member may be evaluated over the years and their rating may be increased or decreased based on changes in the member's medical condition at the current time.  However, a higher rating by the DVA, years following separation from the service, does not warrant a change in the total compensable rating awarded at the time of the member's separation.

AFBCMR Board Decision, Docket No. BC-2019-02820 at 3 (Jan. 2020).

Mr. Jones sought review of this decision in the Court of Federal Claims. That court held that the claim is barred by the Tucker Act's six-year statute of limitations, stating that "the court is powerless to reach the merits of Mr. Jones' claim because that claim is barred by the statute of limitations." Fed. Cl. Op. at 710.

My colleagues agree, holding that any claim for disability retirement benefits accrued at the time of Mr. Jones' 1988 discharge, although he was rated at only 10% disabled at discharge. My colleagues hold that Mr. Jones should have claimed disability retirement at discharge, and that "Mr. Jones, who reasonably understood his condition to be disabling in 1988, cannot use his later diagnosis of TBI and PTSD or his subsequent proceedings before the corrections board to obviate the 1988 accrual of his claim and suspend the running of the statute of limitations from that time." Maj. Op. at 16–17.

I cannot agree that the period of limitations accrues while the claim is barred by statute, for there cannot be a cause of action for a claim that is contrary to law.

## B

### *The period of limitations cannot accrue until the cause of action exists*

The government argued that the Tucker Act statute of limitations accrued from Mr. Jones' discharge in 1988. The Court of Federal Claims agreed, holding that "because Mr. Jones did not file suit in this court within six years of his separation from the Air Force in 1988, but instead filed suit more than thirty years later, his claim for disability retirement pay and benefits is barred by 28 U.S.C. § 2501." Fed. Cl. Op. at 708.

My colleagues agree. In this reconsideration decision the court explains at length that Mr. Jones could have argued that he was at least 30% disabled at discharge,

despite the holdings of the Air Force's PEB and MEB at the time of discharge.  My colleagues appear to rely on their reconstruction of Mr. Jones' disabilities to establish that the statute of limitations has run, although my colleagues provide no citations to contemporaneous findings of increased disability.  *See e.g.*, *Rotella v. Wood*, 528 U.S. 549, 555 (2000) ("in applying a discovery accrual rule, we have been at pains to explain that discovery of the injury, not discovery of the other elements of a claim, is what starts the clock.").  The accruing of a statutory bar  requires that the barring events were known or reasonably knowable.  In *Martinez v. United States*, 333 F.3d 1295 (Fed. Cir. 2003) (en banc) this court explained:

> A cause of action cognizable in a Tucker Act suit accrues as soon as all events have occurred that are necessary to enable the plaintiff to bring suit, *i.e.*, when 'all events have occurred to fix the Government's alleged liability, entitling the claimant to demand payment and sue here for his money.'

*Id.* at 1303 (quoting *Nager Elec. Co. v. United States*, 368 F.2d 847, 851 (Ct. Cl. 1966)).  By statute, entitlement to disability retirement requires at least 30% disability or 20 years of service.  *See ante*.  Since such events had not occurred in 1988, the Tucker Act statute of limitations cannot have accrued in 1988.

The authority cited by the court does not hold otherwise.  My colleagues cite *Real v. United States*, 906 F.2d 1557, 1560 (Fed. Cir. 1990) for the statement that a disability retirement claim accrues "[i]f at the time of discharge an appropriate board was requested by the service member and the request was refused or if the board heard the service member's claim but denied it, the limitations period begins to run upon discharge."  However, the Physical Evaluation Board and Medical Evaluation Board found only 10% disability, well below the statutory threshold for disability retirement.

This appeal does not turn on whether Mr. Jones was correctly found to be only 10% disabled at the time of discharge. The question is whether the Court of Federal Claims is barred by the statute of limitations from reviewing Mr. Jones' claim for disability retirement, including whether he became entitled to such benefit when he was rated at 100% disabled in 2017. The age-related progression of service-connected disability is not unusual, and the record before us shows no determinations of fact and law for Mr. Jones' concerns.

With no development of evidence, my colleagues accept the government's argument that Mr. Jones was required to litigate disability retirement in 1988, and that his failure to do so exposed all later actions to the bar of accrued limitations. The government states that "[i]n 1988, Mr. Jones could have filed suit to challenge the disability rating by the Air Force as insufficient, and so could have sought a medical retirement." Gov't Br. 20. My colleagues agree, and hold that since Mr. Jones did not challenge his 10% disability rating in 1988, he became forever barred although his rating reached 100%. That cannot be an appropriate application of limitations principles to the facts hereof.

The PEB and the MEB in recommending Mr. Jones' discharge agreed that he was 10% disabled; they did not "consider or determine finally the claimant's eligibility for disability retirement," as in *Real*, 906 F.2d at 1560 (quoting *Friedman v. United States*, 310 F.2d 381, 396 (Ct. Cl. 1962). Although my colleagues state that "an appropriate board heard his claim" at discharge, Maj. Op. at 12, neither Mr. Jones nor the government states that he received a hearing on a claim for disability retirement at discharge. Precedent is more rigorous; in *Real* the court explained that "under *Friedman* if the service member had neither requested nor been offered consideration by a retiring board prior to discharge, the later denial of his petition by

the corrections board was the triggering event, not his discharge." 906 F.2d at 1560. That is the situation here, for Mr. Jones went to the corrections board in 2018, and no Tucker Act period of limitations has run.

Of concern is the court's holding that because Mr. Jones did not take legal action to challenge the 10% disability rating, there accrued a statutory bar to his claim after he became 100% disabled. This view of the law contravenes the principles of limitations, for changing circumstances may change the claim. However, the majority states its concern about "open[ing] the door to the resurrection of previously decided disability retirement claims simply because medical knowledge advanced after the claims first were decided by the military service involved." Maj. Op. at 17. I observe, first, that Mr. Jones' claim based on 100% disability was not "previously decided;" and second, if medical knowledge indeed has advanced in a way relevant to a veteran's claim, surely the door should be opened wider—not slammed shut.[2]

The AFBCMR decision was not based on a theory of limitations; it was a decision on the merits, and Mr. Jones presented the Court of Federal Claims with challenges to the merits of the decision. Mr. Jones has the right of judicial review of the rulings of these governmental/military agencies. The Court of Federal Claims, and now this court, err in holding that such review is barred on limitations principles accruing when there was no right of action. The court has made a significant change in law and policy. I respectfully dissent.

---

[2]    Veterans law accommodates changing circumstances and the passage of time, not by barring all claims six years after discharge from service or some initial ruling, but by limiting the compensation for meritorious claims to the date the veteran applied for the benefit.