Harvey A. BURNS, Plaintiff,

v.

The UNITED STATES, Defendant.

No. 178–89C.

United States Claims Court.

July 12, 1990.

Dan R. Hyatt, Portland, Or., attorney of record for plaintiff.

Richard P. Nockett, Washington, D.C., with whom was Asst. Atty. Gen. Stuart M. Gerson, for defendant. David M. Cohen, Director, and Thomas W. Petersen, Asst. Director, of counsel.

## OPINION

FUTEY, Judge.

Plaintiff, a former United States Army enlisted man, challenges his discharge without entitlement to disability retirement benefits. Plaintiff contends that the Army concealed the factual basis for its determination that his disability resulted from his own misconduct. Plaintiff also alleges that he is entitled to judicial review of the Army Board of Correction of Military Records' (ABCMR) decision. In response, defendant requests this court to dismiss plaintiff's amended complaint for lack of jurisdiction upon the ground that this action is barred by statute of limitations set out in 28 U.S.C. § 2501 (1982).

### Factual Background

In August 1969, plaintiff enlisted in the United States Army and served continuously on active duty until February 18, 1972. On April 24, 1971, plaintiff and four other soldiers were in the off limits target artillery area at Fort Bragg. While in this area, plaintiff and other soldiers found "dud rounds" which later exploded. Sworn statements by the individuals involved in the incident state that the applicant and his companions had initially gone to the lake to smoke marijuana and to the Fort to collect spent shell casings for souvenirs. While at the Fort, plaintiff picked up a round and started throwing shell casings at it to see if it would explode. Afterwards, plaintiff picked up the round and started walking to the car. The round exploded killing one soldier, injuring plaintiff and two other soldiers.

An Army Physical Evaluation Board (PEB), conducted an inquiry to determine if plaintiff was entitled to disability benefits. The board determined that plaintiff's injuries were due to his own misconduct and were not received in the line of duty. On January 5, 1972, the PEB recommended that plaintiff be separated from the Army, pursuant to 10 U.S.C. § 1207 (1956), without disability or retirement benefits.[1] On February 18, 1972, plaintiff was honorably discharged from the Army without entitlement to disability benefits.

On April 15, 1986, plaintiff wrote a letter to the President of the United States outlining what took place at Fort Bragg:

We had been drinking alcohol and smoking marijuana ... we passed an impact area that I had previously explored ... remembering this, I told the other four that we could probably find something

---

1. 10 U.S.C. § 1207 provides:

Each member of the armed forces who incurs a physical disability that, in the determination of the Secretary concerned, makes him unfit to perform the duties of his office, grade rank or rating, and that resulted from his intentional misconduct or willful neglect or was incurred during a period of unauthorized absence, shall be separated from his armed force without entitlement to any benefits under this chapter.

out there ... I inspected the round and was reading some printing on it when we heard a clicking noise. The noise alarmed me enough that I released it, turned and started to run. It detonated on impact, killing (another soldier) and causing traumatic amputation of my legs ... I know that I'm responsible for my diminished condition at the time of my accident. ... I feel that the Army continues to punish me financially for an accident they too must share the blame for.

On April 18, 1987, plaintiff applied to the Army Board of Correction of Military Records (ABCMR) to remove the determination that his disability was not incurred in the line of duty. Additionally, plaintiff applied to the review board for benefits retroactive to the date of his discharge. Finally, on March 31, 1989, plaintiff filed a complaint in this court and claimed that his discharge in 1972, without entitlement, was unlawful. Plaintiff alleged that the Army failed to conduct a formal investigation and failed to provide plaintiff with counsel and access to evidence while he was under investigation. Subsequently, the ABCMR issued a Memorandum of Consideration dated July 12, 1989, which stated that "[t]he applicant has failed to submit sufficient relevant evidence to demonstrate the existence of probable material error or injustice." On that date the ABCMR denied plaintiff's application for correction of his military records. Thereafter, plaintiff filed an amended complaint with this court on October 10, 1989, adding a second claim challenging ABCMR's denial of his application for administrative relief as arbitrary, capricious and unsupported by substantial evidence. Plaintiff seeks in his amended complaint, among other items: (1) to have his military records amended to reflect that his disability was incurred in the line of duty; (2) back pay retroactive to the date of discharge in 1972; and (3) recovery of medical expenses incurred since April 24, 1971.

## Discussion

■ Compliance with the Claims Court's statute of limitations is a jurisdictional prerequisite for instigation of suit in this court. *Jones v. United States*, 801 F.2d 1334, 1335 (Fed.Cir.1986), *cert. denied*, 481 U.S. 1013, 107 S.Ct. 1887, 95 L.Ed.2d 495 (1987).

> Every claim of which the United States Claims Court has jurisdiction shall be barred unless the petition thereon is filed within six years after such claim first accrues.

28 U.S.C. § 2501 (1982).

■ "A claim accrues when all the events have occurred which fix the alleged liability of the United States and entitle the claimant to institute an action." *Japanese War Notes Claimants Ass'n. v. United States*, 178 Ct.Cl. 630, 632, 373 F.2d 356 (1967), *cert. denied*, 389 U.S. 971, 88 S.Ct. 466, 19 L.Ed.2d 461 (1967). Disability compensation claims do not accrue until the appropriate board either finally denies such a claim or refuses to hear it. *Real v. United States*, 906 F.2d 1557, 1560 (Fed. Cir. 1990), citing *Friedman v. United States*, 159 Ct.Cl. 1, 13, 310 F.2d 381 (1963). "If at the time of discharge an appropriate board ... heard the service members claim but denied it, the limitations period begins to run upon discharge." *Real*, 906 F.2d at 1560.

■ Once the claim accrues, the statutory period starts running when the plaintiff knew, or should have known, about the cause of action. The Court of Appeals for the Federal Circuit in the *Real* case isolated the issue as: "[W]hether [Real] had adequate notice of his potential disability ... such that he should have and could have brought suit within six years from his ... release," 906 F.2d at 1561, quoting, *Real v. United States*, 18 Cl.Ct. 118, 126–27 (1989). The Federal Circuit focused on whether plaintiff's knowledge of his disability was such that he could have established the disability claim in court at the time that the limitations period began to run. Here, plaintiff's precise knowledge of the nature, cause and extent of his injury and disability at the time of his discharge is undisputed. Ignoring the *Real* question, plaintiff instead asks this court to review

the adjudicated legal ramifications surrounding his conduct when he received his injuries. However, this we cannot do.

"[W]here the Correction Board is not a reviewing tribunal but is the first board to consider or determine finally the claimant's eligibility for disability retirement, the single cause of action accrues upon the Correction Board's final decision." *Real* at 1560, quoting *Friedman*, 159 Ct.Cl. at 25, 310 F.2d 381. In the instant case, the PEB made a determination on January 5, 1972. Consequently, the ABCMR in 1986 acted as a reviewing board and not as the first board to consider the plaintiff's eligibility.

Furthermore, "[T]he failure of the Correction Board to set aside a military discharge does not give rise to a separate and independent claim, since that action is merely ancillary to the discharge the former serviceman is seeking to change." *Hurick v. Lehman*, 782 F.2d 984 (Fed.Cir. 1986), citing *Friedman*, 159 Ct.Cl. at 1, 310 F.2d 381. "[T]he Court of Claims ... has held that resort to the Correction Board is permissive (rather than a mandatory) step, which does not suspend the running of the statute." *Hurick* 782 F.2d at 987, citing *Wilson v. United States*, 231 Ct.Cl. 958 (1982). Plaintiff's action here is not an independent action, but merely ancillary. For these reasons, a separate and independent cause of action is not before the court. Since the ABCMR acted as a reviewing board, plaintiff's claim accrued on February 18, 1972, the date of his discharge. Plaintiff did not file suit in this court until March 31, 1989. This is well beyond the 6–year statute of limitation period allowed under 28 U.S.C. § 2501 (1982). Consequently, the Claims Court does not have jurisdiction over plaintiff's claim.

■ However, the statute of limitations can be tolled under a fraudulent concealment theory. "Plaintiff must either show that defendant has concealed its acts with the result that plaintiff was unaware of their existence or it must show that its injury was 'inherently unknowable' at the accrual date." *Welcker v. United States*, 752 F.2d 1577, 1580 (Fed.Cir.), *cert. denied*, 474 U.S. 826, 106 S.Ct. 83, 88 L.Ed.2d 68

(1985), citing *Japanese War Notes Claimants*, 178 Ct.Cl. at 632, 373 F.2d 356.

Plaintiff's military file shows that plaintiff was provided with a copy of the Line of Duty Investigation Report twice in 1971. The PEB report issued on January 5, 1972, stated that plaintiff was unfit for further military service by reason of his disability, and that his disability was not incurred in the line of duty. The PEB recommended that plaintiff "be separated from the service without entitlement to disability benefits...." Subsequently, on January 12, 1972, plaintiff signed the following statement:

I HAVE BEEN ADVISED OF THE FINDINGS AND RECOMMENDATIONS OF THE PHYSICAL EVALUATION BOARD AS INDICATED ON THE OBVERSE, AND HAVE RECEIVED A FULL EXPLANATION OF THE RESULTS OF THE FINDINGS AND RECOMMENDATIONS AND MY LEGAL RIGHTS PERTAINING THERETO AND

I CONCUR AND WAIVE A FORMAL HEARING OF MY CASE.

Plaintiff contends that, at the time of the line of duty and the PEB investigations, he was not provided with evidence found during the investigation. However, plaintiff does not provide proof of his allegations. Defendant, on the other hand, has shown that plaintiff was supplied with documents notifying him of the findings of the Army's investigations. In response, plaintiff submits that he did not receive a copy of the investigation until 1986, although he requested copies in 1972, 1978 and again in 1985. However, plaintiff's military records establish that plaintiff was provided with a copy of the Line of Duty Investigation Report on at least two occasions in 1971. Additionally, a complete copy of the Investigation Report was later provided on June 30, 1971, notifying plaintiff of the final determination that his injury was not incurred in the line of duty.

Plaintiff's signing of the waiver indicates that plaintiff was aware of the cause of action at this time. Consequently, the court declines to find a tolling of the stat-

ute of limitations here under a concealment theory.

The statutory period also may be extended if plaintiff shows "that the nature of ... [his] injury was such that it was inherently unknowable at the time the cause of action accrued." *Coastal Petroleum Co. v. United States*, 228 Ct.Cl. 864, 866 (1981), *cert. denied*, 456 U.S. 915, 102 S.Ct. 1770, 72 L.Ed.2d 174 (1982); *see Welcker*, 752 F.2d at 1580. "[T]he running of the statute will be suspended when an accrual date has been ascertained, but plaintiff does not know of his claim." *Japanese War Notes Claimants*, 178 Ct.Cl. at 634, 373 F.2d 356. "Once plaintiff is on inquiry that it has a potential claim, the statute can start to run." *Id.* According to the statement plaintiff signed upon discharge, plaintiff knew the reasons and conditions surrounding his discharge from the Army. Consequently, the injury was not inherently unknowable at the time of his discharge from the service.

■ Finally, plaintiff's due process and equal protection claims are also beyond the jurisdiction of this court. "This court has no jurisdiction over claims based upon the Due Process and Equal Protection guarantees of the Fifth Amendment, because these constitutional provisions do not obligate the Federal Government to pay money damages." *Carruth v. United States*, 224 Ct.Cl. 422, 445, 627 F.2d 1068 (1980); *Bellamy v. United States*, 7 Cl.Ct. 720, 723 (1985); *see Alabama Hospital Ass'n. v. United States*, 228 Ct.Cl. 176, 180, 656 F.2d 606 (1981), *cert. denied*, 456 U.S. 943, 102 S.Ct. 2006, 72 L.Ed.2d 465 (1982). *Inupiat Community of the Arctic Slope v. United States*, 230 Ct.Cl. 647, 662, 680 F.2d 122, *cert. denied*, 459 U.S. 969, 103 S.Ct. 299, 74 L.Ed.2d 281 (1982).

*Conclusion*

For the reasons set forth above, defendant's motion to dismiss is granted. The Clerk is directed to dismiss the complaint. No costs.