NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**MICHAEL G. POHL,**
*Plaintiff-Appellant*

**v.**

**UNITED STATES,**
*Defendant-Appellee*

---

2022-2080

---

Appeal from the United States Court of Federal Claims in No. 1:21-cv-01482-CNL, Judge Carolyn N. Lerner.

---

Decided:  April 18, 2023

---

MICHAEL POHL, Liberty Hill, TX, pro se.

SONIA W. MURPHY, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for defendant-appellee.  Also represented by BRIAN M. BOYNTON, PATRICIA M. MCCARTHY, LOREN MISHA PREHEIM.

---

Before REYNA, MAYER, and HUGHES, *Circuit Judges*.

REYNA, *Circuit Judge*.

*Pro se* Appellant Michael G. Pohl is a retired United States Air Force Reserve flight engineer. In 1999, the Air Force informed Mr. Pohl that he would be discharged for physical disqualification based on his back problems. He applied for transfer to the Retired Reserve in lieu of the discharge and was placed on the "Retired Reserve List." In 2018, Mr. Pohl, in an effort to obtain disability retirement pay, petitioned the Air Force Board for the Correction of Military Records ("Record Corrections Board") to change his records to reflect that he had been discharged for medical disqualification for a back disability stemming from an alleged 1991 Air Force training accident. On July 5, 2020, the Record Corrections Board denied the petition.

Mr. Pohl sued the government in 2021 in the United States Court of Federal Claims claiming he was entitled to military disability retirement pay under 10 U.S.C. § 1204. The government moved to dismiss on grounds that Mr. Pohl's claim was barred by the applicable six-year statute of limitations under 28 U.S.C. § 2501. According to the government, Mr. Pohl's claim accrued when he was discharged in 1999. Mr. Pohl argued that his claim accrued on July 5, 2020—the date the Record Corrections Board denied his request to correct his records. The Court of Federal Claims agreed with the government and dismissed the case for lack of subject matter jurisdiction. *Pohl v. United States*, No. 21-1482, 2022 WL 2232302, at *1 (Fed. Cl. Jun. 21, 2022) ("*Decision*"). Mr. Pohl appeals. We affirm.

## BACKGROUND

Mr. Pohl joined the Army in 1982. *Decision*, at *2. He served three years on active duty before joining the Air Force Reserve as a flight engineer. *Id.* Mr. Pohl alleges that in April 1991, he sustained a back injury after falling 100 feet into a ravine during an Air Force training program. *Id.* After returning home from the training, he went to an on-base hospital where the flight surgeon suggested

that if Mr. Pohl were examined "further," the surgeon would find an injury and that injury might "possibly end" his military career. *Id.* at \*3 (quoting Complaint at ¶ 12, *Pohl v. United States*, No. 21-1482 (Fed. Cl. Jun. 16, 2021), ECF No. 1 ("Complaint")).[1] Mr. Pohl left the hospital without further testing. *Id.*

Medical records reflect that Mr. Pohl was injured in 1995 in a motor vehicle accident. *Id.* In 1996, he aggravated the 1991 injury by lifting a heavy object at his civilian commercial-airline job and became "incapacitated." *Id.* (quoting Complaint at ¶ 13). In 1997, he reinjured his back while lifting his son at home. *Id.* In November 1997, the Air Force placed Mr. Pohl on a profile that rendered him "not qualified for deployment" and "not qualified for reassignment." *Id.* at \*4 (quoting Administrative Record at 146, *Pohl* ECF No. 7).

In December 1997, Mr. Pohl's civilian doctor, Dr. Coscia, identified several issues with Mr. Pohl's L5 vertebrae. *Id.* The doctor determined that an x-ray "revealed the extent of the 1991 injury" because they showed a "copious amount of fragmented bony overgrowth." *Id.* (quoting Complaint at ¶ 17). Mr. Pohl was diagnosed with additional spinal injuries and had surgery for a 360-degree fusion of his L5-S1 vertebrae. *Id.*

In June 1998, an Air Force doctor evaluated Mr. Pohl. *Id.*; Complaint at ¶ 14. The doctor noted that, to return to duty, Mr. Pohl needed to provide documentation from his primary care provider stating that he had "no limitations," but further noted that, "[i]n the probable event that the patient's provider recommends long term disability, the patient will need to return for reevaluation" by a

---

[1]    For brevity, other materials from the Court of Federal Claims' docket that are cited here will be referred to as "*Pohl* ECF No. \*\*."

"MedicalEB"—a Medical Evaluation Board. Administrative Record at 106, *Pohl* ECF No. 7; *see also Decision*, at *4; Complaint at ¶ 14. A Medical Evaluation Board or MEB determines whether a service member meets the service's standards for retention under its regulations. *Chambers v. United States*, 417 F.3d 1218, 1225 n.2 (Fed. Cir. 2005). If the MEB finds that the service member does not meet the standards for retention, a Physical Evaluation Board or "PEB" then "determines a service member's fitness for duty and entitlement to disability retirement." *Id*. Mr. Pohl never obtained any documentation from his primary care provider. *Decision*, at *4.

On December 21, 1998, the Air Force mailed Mr. Pohl two memoranda: a "Required Medical Documentation Update" (which asked him to provide medical documentation related to his condition) and a "Selection of Rights to Physical Evaluation Board (PEB)." *Id*. (citing Administrative Record at 102 and 136–137, Pohl ECF No. 7). In the PEB-related document, the Air Force advised Mr. Pohl "that [he] ha[d] been identified as having a medical condition that may be medically disqualifying for worldwide duty and [that may] subsequently result in [his] involuntary separation." Appx100. The Air Force further referenced Department of Defense Directive 1332.18 (Separation or Retirement for Physical Disability), and Department of Defense Instruction 1332.38 (Physical Disability Evaluation), and stated that those provisions require that "a member of the Ready Reserve who is pending separation for a non-duty related impairment or condition shall be afforded the opportunity to have his/her case reviewed by the PEB solely for a fitness determination." *Id*. The Air Force then stated that Mr. Pohl "may elect to have [his] case reviewed by the PEB by completing and returning the attached form evidencing [his] election" and that "[f]ailure to comply will constitute a waiver of this right and discharge proceedings will continue." *Id*.

The government asserts that Mr. Pohl did not respond. *Decision*, at \*4.  Mr. Pohl claims that he never received the documents and that the Air Force never gave him a fitness determination or otherwise gave him the option to go before a medical evaluation board to begin the process of determining his right to obtain disability benefits.  *Id*.

In June 1999, the Air Force declared Mr. Pohl medically disqualified for service based on his back surgery and inability to perform his duties.  *Id*. at \*5; Complaint at ¶ 15. In September 1999, the Air Force notified him of his pending discharge.  *Decision*, at \*5.  Mr. Pohl returned a signed acknowledgement of receipt for the discharge notification, and, in lieu of accepting a discharge, he submitted an application to transfer to the Retired Reserve on September 24, 1999.  *Id*.  He was placed on "Reserve Retired List" effective October 1, 1999.  *Id*.

Mr. Pohl asserts that he had additional back surgeries in 2001 and 2003.  *Id*. at \*4.  In 2016, Mr. Pohl petitioned the U.S. Department of Veterans Affairs for veteran's disability benefits, citing his injuries from the 1991 training incident.  *Id*. at \*3.  In October 2018, the VA found that Mr. Pohl's lower back condition was "service-connected" based on the 1991 incident and assigned him a disability rating of 40%.  *Id*.

In November 2018, to obtain disability retirement benefits through the Department of Defense, Mr. Pohl sought to correct his military record with the Records Corrections Board.  *Id*. at \*5; Complaint at ¶ 21.  He requested that the Records Correction Board correct his discharge records to show that that he was "medically discharged" for a service-connected injury that rendered him permanently disabled. *Decision*, at \*5.  He contended that he had not applied for disability retirement earlier because he did not know that

he was eligible to do so until after he received the VA's 40% disability determination. *Id.*

On July 5, 2020, the Record Corrections Board denied his request to correct the record. Appx19. It determined that Mr. Pohl's application was untimely filed after the three-year filing deadline under 10 U.S.C. § 1552. Appx23. It also determined that Mr. Pohl failed to establish an error or injustice in his military record. *Id.*

In June 2021, Mr. Pohl filed suit against the government in the U.S. Court of Federal Claims seeking military pay, disability retirement pay, reimbursement of expenses, and other benefits under 10 U.S.C. § 1204. *Decision*, at *1, *6. He also asserted due process violations under the Constitution. *Id.*

The government moved to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction. *Id.* at *1. In its motion to dismiss, the government argued that Mr. Pohl's § 1204 claim was barred by the six-year statute of limitations under 28 U.S.C. § 2501. Def. Mot. at 9–11, *Pohl* ECF No. 11. Section 2501 provides in relevant part: "Every claim of which the . . . Court of Federal Claims has jurisdiction shall be barred unless the petition thereon is filed within six years after such claim first accrues." 28 U.S.C. § 2501. According to the government, Mr. Pohl's claims accrued in 1999, the date of discharge, because Mr. Pohl knew at the time of discharge that his disability was permanent. Def. Mot. at 9–11, *Pohl* ECF No. 11.

Mr. Pohl did not challenge that he knew that he was permanently disabled as of discharge, Pl. Resp. Br. at 4–6, *Pohl* ECF No. 12, and he "readily admits he was unfit for flight duty" and that "all parties agree that [he] was retired with a permanent disability," *id.* at 5. He argued instead that the Air Force erred by failing to give him a board medical evaluation review and failing to process him correctly before discharge. *Id.* As a result, Mr. Pohl asserts that his claim did not accrue until July 5, 2020, when the Record

Correction Board denied his request for a record correction. *Id.*

The Court of Federal Claims granted the motion to dismiss, finding that Mr. Pohl's claim was barred by the statute of limitations and that the court thus lacked subject matter jurisdiction over the claims. *Decision*, at *1, *7–9. The court determined that, under Federal Circuit case law, Mr. Pohl's claim accrued at the time of discharge, in 1999. The Court of Federal Claims found that Mr. Pohl waived his right to board review in 1999 because Mr. Pohl "knew he was permanently disabled" at the time of discharge, April 1991, *id.* at *8, and "[e]ven if [he] did not have the requisite knowledge," he voluntarily transferred to the Retired Reserve, *id.* at *9.

The court explained that Mr. Pohl's "counsel admitted at oral argument, and the Complaint makes clear, that Mr. Pohl knew he was permanently disabled" at the time of discharge. *Id.* at *8 (citing Hr'g Tr. at 19:1–6, *Pohl* ECF No. 18; Complaint at ¶ 13). The court noted that Mr. Pohl's assertion that he was unaware of the service-connected disability until the VA's 2018 rating was "incredulous" because Mr. Pohl was the one who self-reported the 1991 incident to the VA. *Id.* The court determined that the statute of limitations could not be equitably tolled or waived, and that the court was further divested of jurisdiction over his lawsuit. *Id.* at *9.

Mr. Pohl appeals. We have jurisdiction under 28 U.S.C. § 1295(a)(3).

## DISCUSSION

Whether the Court of Federal Claims has jurisdiction over a claim is a question of law that we review de novo. *Jones v. United States*, 30 F.4th 1094, 1100 (Fed. Cir. 2022). The plaintiff bears the burden of establishing jurisdiction by a preponderance of the evidence. *Diaz v. United States*, 853 F.3d 1355, 1357 (Fed. Cir. 2017). We review

the court's findings of fact relating to jurisdictional issues for clear error. *Jones*, 30 F.4th at 1100. "If the Court of Federal Claims' findings of fact are plausible in light of the record viewed in its entirety, this court may not reverse them even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently." *Bernard v. United States*, 98 F. App'x 860, 861 (Fed. Cir. 2004) (cleaned up).

"To fall within the jurisdiction of the Court of Federal Claims, a claim against the United States filed in that court must be 'filed within six years after such claim first accrues.'" *Jones*, 30 F.4th at 1100 (quoting 28 U.S.C. § 2501 (1988)). This deadline requirement is jurisdictional and cannot be equitably tolled or waived. *Reoforce, Inc. v. United States*, 853 F.3d 1249, 1264 (Fed. Cir. 2017).

Generally, "claims of entitlement to disability retirement pay do not accrue until the appropriate board either finally denies such a claim or refuses to hear it." *Real v. United States*, 906 F.2d 1557, 1560 (Fed. Cir. 1990). "The decision by the first statutorily authorized board which hears or refuses to hear the claim is the triggering event." *Id.* Where the service member has "neither requested nor been offered consideration by a retiring board prior to discharge," a corrections board's later denial of his petition is generally the "triggering event." *Id.*[2]

But there is an exception to that general rule. Under certain circumstances, a service member's failure to request a review by a retiring board before discharge may have the same effect as a refusal by the service to provide board review. *Id.* That failure can trigger the statute of limitations when the service member has sufficient "knowledge of the existence and extent of his condition at

---

[2] The "retiring board" is now the PEB. *Chambers*, 417 F.3d at 1225 n.2.

the time of his discharge . . . to justify concluding that he waived the right to board review of the service's finding of fitness by failing to demand a board prior to his discharge." *Id.* at 1562 (footnote omitted). In a footnote, the *Real* court added: "This assumes that the service member has been informed that the failure to demand a board prior to discharge will result in his being ineligible for disability benefits from the service." *Id.* at 1562 n.6.

This footnote suggests that, before the statute of limitations is triggered, the service member must be both (1) aware of his condition *and* (2) made aware that his failure to demand a board review before discharge will result in potentially missing out on disability benefits. Later cases from this court, however, have not referenced *Real*'s footnote 6. A 2003 nonprecedential case did allude to this two-part framework—but without citing *Real*'s footnote 6—stating: "[W]hen a service member is sufficiently alerted to the possible existence of a disability to ask for or appear before a Retiring Board, the awareness of the disability *coupled with* awareness of the review board process causes the disability claim to accrue at that time." *Purvis v. United States*, 77 F. App'x 512, 514 (Fed. Cir. 2003) (emphasis added) (cleaned up). Yet other cases have discussed only the first issue—awareness of the condition. *See, e.g., Ullmann v. United States,* 123 F. App'x 970, 973 (Fed. Cir. 2004) (focusing on the service member's knowledge of the permanent disability). In the 2005 precedential *Chambers* case, this court appeared to interpret *Real* as requiring only awareness of the condition—essentially *equating* awareness of the condition *with* awareness of entitlement to disability retirement pay. Indeed, the *Chambers* court stated—without mentioning *Real*'s footnote 6—that the service member's failure to demand a Board Review "can invoke the statute of limitations when the service member has sufficient actual or constructive notice of his disability, *and hence*, of his entitlement to disability retirement pay."

*Chambers*, 417 F.3d at 1226 (emphasis added) (citing *Real*, 906 F.2d at 1562).

As the foregoing indicates, applicable case law is not clear whether the exception requires satisfaction of: (1) an awareness of the condition, and (2) an awareness that the failure to demand a board review before discharge will result in potentially losing disability benefits. For its part, the Court of Federal Claims here did not expressly consider the issue, but it appears to have concluded that the second element, awareness to demand a board review, was not a requirement under *Real* or *Chambers*. *Decision*, at *8 and n.5. In any event, the court also appears to have concluded that Mr. Pohl was aware through the December 1998 communications that he needed to seek a PEB as part of the retirement disability process. *Id*. at *8.

We need not resolve the legal issue here, because the record shows that Mr. Pohl was made aware of the board review process and potential loss of entitlement to disability benefits pay. In June 1998, the Air Force doctor that evaluated Mr. Pohl noted that, if Mr. Pohl's primary care doctor recommended long term disability, Mr. Pohl would need to return for reevaluation by an MEB. Administrative Record at 106, Pohl ECF No. 7; Decision, at *4; Complaint at ¶ 14. And shortly thereafter, the Air Force informed Mr. Pohl of his right to a PEB; referred to Department of Defense Directive 1332.18 (Separation or Retirement for Physical Disability) and Department of Defense Instruction 1332.38 (Physical Disability Evaluation); and warned him that a failure to elect to have his case reviewed by a PEB would "constitute a waiver of this right." Appx100.

We also agree with the Court of Federal Claims that Mr. Pohl had "sufficient actual or constructive notice of his disability." *Chambers*, 417 F.3d at 1226. The issue is whether the service member's "knowledge of the existence and extent of his condition at the time of his discharge was

sufficient to justify concluding that he waived the right to board review of the service's finding of fitness by failing to demand a board prior to his discharge." *Id.* (quoting *Real*, 906 F.2d at 1562). To determine if the service member had such knowledge, we look to the relevant statutory requirements for disability retirement—here, 10 U.S.C. § 1204. *Id.* Under § 1204, a service member may be retired with disability retirement pay if, among other things, the disability is permanent and stable; is the proximate result of performing active duty or inactive-duty training or is the result of an injury incurred or aggravated in the line of duty while performing active duty or inactive-duty training; and is not a result of his intentional misconduct. 10 U.S.C. § 1204. The inquiry here is whether Mr. Pohl knew that he had a permanent disability that was service-connected and not a result of his intentional misconduct. *Cf. Chambers*, 417 F.3d at 1226 (explaining that the inquiry under the similar requirements of § 1201 was whether "Chambers knew that he was entitled to disability retirement due to a permanent disability that was not a result of his intentional misconduct and was service-connected").

Mr. Pohl argues in his informal brief that in 1999 he was unaware of a disability that would entitle him to disability retirement benefits because his "condition was not medically permanent and stable in 1999," noting that he had additional surgeries and that he was still under the care of his doctor at that time. Appellant's Br. 2. He also appears to argue that he had no reason to believe in 1999 that his back issues were tied to his injury from the 1991 training incident. *Id.* at 6. The record does not support these arguments.

Mr. Pohl's Complaint alleged that he was "in constant pain" after his 1991 accident; that in 1997, he was rendered "incapacitated" after further injuring his back; and that his doctor identified significant issues with his back and diagnosed several back injuries. Complaint at ¶ 13. Mr. Pohl's counsel also stated at oral argument that Mr. Pohl knew

that he was disabled at the time of his discharge. Hr'g Tr. at 19:1–6, *Pohl* ECF No. 18. Mr. Pohl also admitted that "he was unfit for flight duty" and that "all parties agree that Mr. Pohl was retired with a permanent disability." Pl. Resp. Br. at 5, Pohl ECF No. 12. And as for knowledge of service-connection, as the Court of Federal Claims explained, Mr. Pohl himself suggested below that he understood his doctor's 1997 "finding of a 'copious amount of fragmented bony overgrowth' on his vertebrae . . . to be evidence of 'the extent of the 1991 injury,'" and Mr. Pohl himself pointed to the 1991 accident before the VA to obtain a service-connected disability rating. *Decision*, at \*8 (citing Complaint at ¶ 17; Pl.'s Mot. at 3, 8, *Pohl* ECF No. 8; Hr'g Tr. at 11:16–12:1 and 43:4–12, *Pohl* ECF No. 18). We conclude that the Court of Federal Claims did not clearly err in finding that Mr. Pohl was sufficiently aware of his permanent, service-connected disability in 1999, the date of his discharge.[3]

We hold that the Mr. Pohl's claim for disability retirement rights accrued in 1999, at which time he had actual and constructive knowledge of his § 1204 benefits, and the statutory six-year statute of limitations began to run. Based on the foregoing, we affirm the judgment of the Court of Federal Claims that it lacked jurisdiction over Mr. Pohl's claims. We have considered Mr. Pohl's other arguments and find them unpersuasive.

## AFFIRMED

---

[3] Mr. Pohl also argues that the Court of Federal Claims erred by not focusing on whether the Air Force was aware that Mr. Pohl was permanently disabled. Appellant's Br. 3. But "[i]t is a *plaintiff's* knowledge of the facts of the claim that determines the accrual date." *Young v. United States*, 529 F.3d 1380, 1385 (Fed. Cir. 2008) (emphasis added).

COSTS

No costs.